478 A.2d 16

**Margaret J. ADRIANCE**

v.

**Randy J. ADRIANCE and Vicki L. Adriance.**

**Appeal of Randy J. ADRIANCE.**

Superior Court of Pennsylvania.

Argued Feb. 2, 1984.

Filed May 25, 1984.

170

Warren R. Baldys, Jr., Williamsport, for appellant.

Gerald W. Seevers, Williamsport, for appellees.

Before SPAETH, President Judge, and BECK, and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant, Randy J. Adriance, contends that the lower court erred in (1) enforcing its previous decree awarding custody of the parties' children to appellee, Margaret J. Adriance, and (2) refusing to recognize the Nevada custody decrees awarding custody to appellant, and the Maryland order recognizing the Nevada decree. We find that the lower court correctly resolved these issues under the Uniform Child Custody Jurisdiction Act (UCCJA), 42 Pa.C.S.A. § 5341 *et seq.*, and, accordingly, affirm the lower court's order.

### Facts

The parties were married in June of 1972. On April 17, 1978, appellant left the family home in Lawrenceville, Pennsylvania, without warning or notice of his destination, and took with him the parties' two children, who were then ages three and five years old. On May 8, 1978, appellee petitioned the lower court for custody of the children and on

May 9, the court issued a rule to show cause why the relief sought in the petition should not be granted, returnable for a hearing on June 22, 1978. A copy of the petition was served by certified mail dated May 18, 1978, on appellant at his last known address in Denver, Colorado.[1] At the June 22 hearing, appellant failed to appear and the lower court awarded custody of the children to appellee.

On June 19, 1978, appellant filed a divorce action in Elko County, Nevada, and service was effected on appellee on June 23. On August 1, 1978, the Nevada court granted the divorce and awarded custody of the children to appellant by default. On October 24, 1978, appellee moved to open the custody portion of the Nevada judgment and for a hearing. On November 10, 1978, the Nevada court granted the motion and held a hearing on January 22, 1978, at which time both parties presented evidence. On January 24, 1979, the Nevada court awarded custody to appellant and visitation to appellee for the month of July each year.

In July, 1979, appellee, exercising her visitation rights, picked up the children from their paternal grandparents' home in Lawrenceville, Pennsylvania, and took them to Maryland, where she had moved. She did not return the children at the end of the month, believing the Pennsylvania custody decree to be valid in Maryland.

Appellant located appellee in Annapolis, Maryland, and petitioned the Maryland court for recognition and enforcement of the Nevada decree. Following a hearing on August 17, 1979, the Maryland court recognized and enforced the Nevada custody decree. Appellee was not notified of this hearing and, accordingly, failed to appear.

Appellant then took the children to Nevada and, on January 31, 1980, upon his affidavit and following a hearing, the Nevada court held appellee, who was absent, in contempt and amended its prior custody decree to restrict appellee's

1. Because the return receipt for this certified copy was accepted and signed by appellant's sister on May 24, 1978, we conclude that appellant received adequate notice of the petition and June 22, 1978 hearing.

July visitations to the paternal grandparents' home under the supervision of either appellant or the grandparents.

In July, 1983, while the children were residing with their grandparents in Lawrenceville, Pennsylvania, pursuant to the amended Nevada decree, appellee petitioned the Pennsylvania lower court on July 25 for a writ of habeas corpus, challenging the legality of the grandparents' and appellant's custody, and requesting enforcement of the Pennsylvania June 28, 1978 order and nonrecognition of the Nevada decrees. The writ was issued and served on the paternal grandmother, who subsequently appeared before the lower court on July 26, 1983. The court ordered that the Tioga County Domestic Relations Department assume temporary custody of the children pending a hearing and forbade the removal of the children from Pennsylvania. On August 3, 1983, appellant appeared to object to the lower court's subject matter jurisdiction, and on August 5, took the children to California in violation of the court order. On August 15, 1983, the lower court ruled that it could not hold an evidentiary hearing with respect to best interests because it lacked subject matter jurisdiction under the UCCJA. However, the lower court did enforce its prior custody decree of June 28, 1978, granting custody to appellee.

On August 23, 1983, appellee filed a criminal complaint against appellant in a Pennsylvania court, charging him with interference with custody of children, 18 Pa.C.S.A. § 2904, and extradition papers were issued. Appellant was arrested in Bakersfield, California, and imprisoned to await an extradition hearing. The children were placed in The Department of Welfare Shelter Home in California. Appellant has been released on bail and now awaits the extradition hearing in California. The children are in his custody in California.

On September 6, 1983, appellant filed the instant appeal from the August 15, 1983 order.

*Jurisdiction*

Section 5344(a) of the UCCJA provides that:

...—A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this Commonwealth:

(i) is the home state of the child at the time of commencement of the proceeding; or

(ii) had been the home state of the child within six months before commencement of the proceeding and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

(2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

(ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training, and personal relationships of the child;

(3) the child is physically present in this Commonwealth, and:

(i) the child has been abandoned; or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

(4)(i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum to determine the custody of the child; and

(ii) it is in the best interest of the child that the court assume jurisdiction; or

(5) the child welfare agencies of the counties wherein the contestants for the child live, have made an investigation of the home of the person to whom custody is awarded and have found it to be satisfactory for the welfare of the child.

42 Pa.C.S.A. § 5344. "Home state" is defined as "[t]he state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, or in an institution, for at least six consecutive months[.]" *Id.* § 5343.

■ Here, the lower court properly determined on August 15, 1983, that it lacked subject matter jurisdiction under the UCCJA to hold an evidentiary hearing on the children's best interests. Pennsylvania is no longer the "home state" of the children because they have been living in California for the past five years and appellee has been living in Maryland for several years. None of the parties now have a "significant connection" with Pennsylvania, nor is there available in Pennsylvania "substantial evidence concerning the present or future care, protection, training, and personal relationships of the [children]." Two other states involved in this dispute, California and Maryland, appear to have proper bases for UCCJA jurisdiction and have not declined such jurisdiction. There are no allegations of child abandonment, neglect or abuse.

■ However, we hold that the lower court also correctly determined that it did have jurisdiction to *enforce* its prior custody decree of June 28, 1978, pursuant to the habeas corpus action instituted by appellee on July 25, 1983. For a court to have jurisdiction in a habeas corpus proceeding for child custody, the children must either be physically present in the state, reside in the state, or be domiciled in the state. *Wolf v. Weymers*, 285 Pa. Superior Ct. 361, 365, 427 A.2d 678, 680 (1981); *Coombs v. Coombs*, 225 Pa. Superior Ct. 304, 307, 303 A.2d 498, 499 (1973). *Cf. Brocker v. Brocker*, 429 Pa. 513, 519, 241 A.2d 336, 338 (1968) (courts have

inherent power to enforce their orders and decrees). *See* P. Hoff, *Interstate Child Custody Disputes and Parental Kidnapping: Policy, Practice and Law* 8–11 (1982) ("[I]n cases in which a party resorts to habeas corpus to enforce an already existing decree, UCCJA ... jurisdictional requirements need not be met for the court to grant the requested enforcement remedy."). Here, the children were physically present in Pennsylvania when appellee petitioned the lower court for the writ of habeas corpus and the court assumed jurisdiction. They only left Pennsylvania because appellant took them to California in violation of the court order.

Because the UCCJA provisions *are* concerned with a court's jurisdiction to make an initial or modified custody determination, they are relevant in determining the merits of this appeal.

### Pennsylvania Decree

■ The first question is whether the lower court had jurisdiction when the initial Pennsylvania custody decree of June 28, 1978, was entered. We find that the Pennsylvania court had jurisdiction to make the initial custody decree by virtue of its being the children's "home state". *See* 42 Pa.C.S.A. § 5344(a)(1). The children resided with their parents in Lawrenceville, Pennsylvania, from the moment of their births until April 17, 1978, when appellant removed them from the Commonwealth. Appellee petitioned for custody in Pennsylvania on May 8, 1978, at which time no other state could claim UCCJA jurisdiction. Because the June 28, 1978, decree has never been modified, it is binding on the parties under § 5353 of the UCCJA. *See* 42 Pa.C.S.A. § 5353; *Commonwealth ex rel. Zaubi v. Zaubi,* 492 Pa. 183, 188–189, 423 A.2d 333, 336 (1980).[2]

2. Section 5353 of the UCCJA provides that:
   A custody decree rendered by a court of this Commonwealth which had jurisdiction under section 5344 (relating to jurisdiction) binds all parties who have been served in this Commonwealth or notified in accordance with section 5346 (relating to notice to persons outside this Commonwealth; submission to jurisdiction) or

*Nevada Decree*

■ The next question is whether the Nevada custody decree of January 24, 1979, or its amended decree of January 31, 1980, can be recognized and enforced by the courts of this Commonwealth. Section 5354 of the UCCJA provides that:

> The courts of this Commonwealth shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this subchapter or which was made under factual circumstances meeting the jurisdictional standards of this subchapter, so long as the decree has not been modified in accordance with jurisdictional standards substantially similar to those of this subchapter.

42 Pa.C.S.A. § 5354. At the time of the Nevada decree, Nevada had not enacted the UCCJA and its applicable jurisdictional requirements, *i.e.*, six weeks residency and presence of the children, were not in substantial accordance with the UCCJA. Additionally, the factual circumstances surrounding the initial Nevada decree did not meet the jurisdictional standards of § 5344 of the UCCJA. Nevada was not a "home state" because the children had been there for less than six months when the Nevada court entered the initial default judgment and when appellee commenced proceedings for opening the default judgment. Further, at that time, appellee was still living in Pennsylvania and most of the substantial evidence relevant to custody was available in Pennsylvania. Moreover, we agree with the lower court's statement that

> the Nevada Court's action frustrated the purposes of the UCCJA which are this Commonwealth's policy to wit;

> who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard. As to these parties the custody decree is conclusive as to all issues of law and fact decided and as to the custody determination made unless and until that determination is modified pursuant to law, including the provisions of this subchapter.

42 Pa.C.S.A. § 5353.

(1) It encouraged Randy's [appellant's] abduction of the children designed to obtain a custody award, whereas our policy is to discourage such abductions.

(2) It failed to facilitate enforcement of this State's prior valid custody order, whereas our policy is to facilitate enforcement of valid orders.

(3) It failed to cooperate with this court to avoid jurisdictional competition, whereas our policy is to so cooperate.

(4) And it failed to assure litigation in the state where the family and child have the closest connections and significant evidence exists, whereas our policy is to strive for such assurances. Sec. 42 Pa.C.S. 5342.

(Lower Court Opinion at 7–8). The lower court also noted that the Nevada court failed to acknowledge the prior Pennsylvania decree or proceedings despite its awareness of them and did not decline jurisdiction. *See* Lower Court Opinion at 8. Accordingly, we cannot recognize and enforce the Nevada decree because it's jurisdictional validity, if any, was limited to Nevada. It follows that the amended Nevada decree is also unenforceable.

### Maryland Order

■ Because of our conclusion that the Nevada court lacked UCCJA jurisdiction to make a custody determination, we find that the Maryland order of August 17, 1979, recognizing and enforcing the Nevada decree as a decree of the State of Maryland, cannot be recognized and enforced by the courts of this Commonwealth. Appellee was never notified of the Maryland hearing and was not present or represented at such hearing. The question of Pennsylvania jurisdiction vis-a-vis Nevada jurisdiction was never addressed by the Maryland court. Moreover, the Maryland order relied on appellant's petition which erroneously stated that the Nevada decree had been made under factual circumstances meeting the jurisdictional standards of the UCCJA, which Maryland had enacted.

## Conclusion

■ Under these circumstances, we hold that the lower court properly (1) enforced the initial Pennsylvania decree awarding custody of the children to appellee and (2) refused to recognize the Nevada custody decrees and the Maryland order.[3] Accordingly, we affirm the August 15, 1983 order of the court below.

Affirmed.

---

**3.** We emphasize that the lower court merely enforced its prior custody decree and did *not* hold an evidentiary hearing on best interests because it lacked jurisdiction to do so under the UCCJA. Therefore, we believe that a full determination of the best interests of the children in the instant case should be commenced, as needed, in a state with proper UCCJA jurisdiction to modify the June 28, 1978 Pennsylvania decree, namely, California or Maryland.