336 Pa. Superior Ct. 298 (1984)
485 A.2d 813
M.D.,
v.
B.D., Appellant.
Supreme Court of Pennsylvania.
Submitted April 2, 1984.
Filed December 14, 1984.
*300 Mark L. Tunnell, Phoenixville, for appellant.
Joseph J. Neizer, West Chester, for appellee.
Before WIEAND, JOHNSON and LIPEZ, JJ.
WIEAND, Judge:
In this appeal from an order awarding custody of a son to his father, the boy's mother contends (1) that the trial court lacked jurisdiction to decide the custody issue and (2) that if it had jurisdiction, the court abused its discretion by separating her son from his baby sister. Finding no merit in these contentions, we affirm.
*301 M.D. was a resident of Pennsylvania; B.D. was a resident of the State of Washington. They were married in Chester County, Pennsylvania, on January 7, 1978. After a brief stay in Washington, M.D., who was then a member of the United States Navy, was transferred to California. M.D., Jr. was born in California on November 4, 1978. Shortly thereafter, M.D. was sent overseas, and B.D. returned with her infant son to Chester County, where they resided with M.D.'s parents until July, 1979. They then returned to California where they were joined by M.D. in September, 1979. When M.D. and B.D. separated in June, 1980, M.D., Jr. lived with his paternal grandparents in Chester County, Pennsylvania. After M.D. was discharged from the Navy on August 5, 1980, he returned to his parents' home in Pennsylvania to join his son. He and his wife then reconciled and she, too, moved to Chester County, Pennsylvania. However, on February 20, 1981, B.D. left the marital home in Chester County and, taking her son, returned to Port Orchard, Washington. Three days later, on February 23, 1981, she commenced an action for divorce in Washington. Her complaint included a prayer for custody of M.D., Jr.
M.D. filed a petition for custody in Pennsylvania on August 12, 1981, and a hearing thereon was set for October 27, 1981. On that day, B.D. failed to appear, and custody of the parties' son was awarded to his father. Armed with the Pennsylvania court's order awarding custody to him, M.D. went to his wife's home in Washington, removed his son, and returned with his son to Pennsylvania. On December 11, 1981, a Washington court awarded custody of M.D., Jr. to B.D.
B.D. then filed a petition to reopen the decree entered by the Court of Common Pleas of Chester County, alleging that that court had lacked jurisdiction to decide the custody issue and that she had not received notice of the prior hearing. The Chester County court determined that Pennsylvania, not Washington, had jurisdiction by virtue of the Uniform Child Custody Jurisdiction Act which had been *302 adopted in both states.[1] However, the court awarded a new hearing on the issue of custody. After a full hearing, the court's prior order was affirmed on October 21, 1982. B.D. appealed.
Conflicting orders entered by the courts of sister states are one of the evils which the Uniform Act was intended to prevent. The Act's primary purpose was "to deter abductions, unilateral removal, and improper retention of children by one of the parents in order to thwart a custody award or to gain an upper hand in the custody fight. The legislature also attempted to promote cooperation and facilitate the enforcement of foreign custody decrees by avoiding jurisdictional conflicts with courts of other states and relitigation of foreign custody awards. "Finally, [the] Act sought to assure that custody disputes would be heard in the state with which the child and his family have the closest connection." Tettis v. Boyum, 317 Pa.Super. 8, 13, 463 A.2d 1056, 1058 (1983); Uniform Child Custody Jurisdiction Act, 9 U.L.A. 114 Commissioners Prefatory Note (1979). Although we decry the impasse which has occurred in this case,[2] it is clear that the courts of *303 Pennsylvania and not the courts of Washington have jurisdiction to hear this custody dispute.
The child who is the subject of this dispute was a resident of Pennsylvania. Except for the period during which his father, the appellee, had been stationed in California, he always lived in Pennsylvania. Until his mother, the appellant, removed him unceremoniously from his home in Chester County, M.D., Jr. had never lived in the State of Washington. The actions brought by appellant and appellee in Washington and Pennsylvania respectively were both commenced within six months of M.D., Jr.'s removal from his Chester County home. Clearly, therefore, Pennsylvania was the "home state." See: 42 Pa.C.S. § 5343. As such, the Pennsylvania courts had jurisdiction to decide the issue of the child's custody. 42 Pa.C.S. § 5344(a)(1).
It is equally clear that the court in Washington could not exercise jurisdiction consistently with the provisions of the Uniform Act. After M.D., Jr.'s removal from Pennsylvania by his mother, he lived in Washington for only three days before an action was there commenced to decide the issue of his custody. It is readily apparent, therefore, that the boy had no significant connection with the State of Washington. Pennsylvania had been his home, even when his parents had been separated, and it was in Pennsylvania, not Washington, where the evidence was available concerning his care, protection and personal relationships. Except for his mother, who took him to Washington three days before commencing an action in that State, the child had had no contact whatsoever with Washington. Under these circumstances, it was clearly violative of the Uniform Act for a court in Washington to assume jurisdiction to decide the custody dispute between these parties. Its order, therefore, will not be recognized in Pennsylvania. Adriance v. Adriance, 329 Pa.Super. 168, 478 A.2d 16 (1984). Jurisdiction, instead, is vested in the courts of Pennsylvania. The lower court did not err by proceeding to hear and determine the custody issue. See: Commonwealth ex rel. Octaviano *304 v. Dombrowski, 290 Pa.Super. 322, 434 A.2d 774 (1981); In re Matter of D.L.S., 278 Pa.Super. 446, 420 A.2d 625 (1980).
Appellant contends that the court in Pennsylvania erred because it failed to place adequate weight on the fact that she had given birth to a baby girl on October 19, 1981, a period of eight months after she had left Pennsylvania. She testified that M.D., Jr. prior to his return to Pennsylvania, had been involved in making preparations for receiving this new member of the family and had helped to rock and feed the baby following the child's birth. However, the controlling factor in determining M.D., Jr.'s custody was the manner in which his best interests would be served. See: Hartman v. Hartman, 328 Pa.Super. 154, 157, 476 A.2d 938, 939 (1984); Herron v. Seizak, 321 Pa.Super. 466, 468, 468 A.2d 803, 804 (1983). Although the general rule is that siblings should not be separated in the absence of compelling reasons, this policy is but one factor to be considered, together with others, in determining the manner in which a child's best interests will be served. Snellgrose Adoption Case, 432 Pa. 158, 167 n. 4, 247 A.2d 596, 601 n. 4 (1968); Tobias v. Tobias, 248 Pa.Super. 168, 174, 374 A.2d 1372, 1375 (1977). M.D., Jr. had only known his baby sister for a month and a half after her birth. He had lived with his father, separate and apart from his sister, for almost two years immediately prior to the final custody determination. Dr. Theron Male, a psychologist, had examined each parent separately and each parent with M.D., Jr. He testified that the boy was a happy and healthy child who was comfortable with either parent. He testified that a change in custody would be distressing, but, that M.D., Jr. should be able to adapt. He recommended, however, that because M.D., Jr. was being adequately provided for and was developing normally in a stable environment, the trauma of a custodial change should be avoided. The trial court found this opinion credible and held that there was no reason to uproot M.D., Jr. from a family relationship known to be healthy, happy and stable for one that was uncertain. This was a justifiable reason for maintaining custody with appellee. *305 See: In re Custody of Pearce, 310 Pa.Super. 254, 261, 456 A.2d 597, 601 (1983); In re Custody of Temos, 304 Pa.Super. 82, 117-118, 450 A.2d 111, 129 (1982); Jon M.W. v. Brenda K., 279 Pa.Super. 50, 56, 420 A.2d 738, 741 (1980). Having reviewed all the circumstances of this case, we find no abuse of discretion in the trial court's order. See: Commonwealth ex rel. Robinson v. Robinson, 505 Pa. 226, 478 A.2d 800 (1984). The fact that the court failed to discuss specifically the existence of a general policy in favor of raising siblings together was not alone reversible error. We will not remand merely to give the hearing court an opportunity to discuss such a policy. To do so would serve only to prolong further this much delayed litigation.
The order is affirmed.
NOTES
[1] In Pennsylvania, the Uniform Act appears at 42 Pa.C.S. § 5341 et seq.
[2] The record discloses that the court in Chester County was informed on October 27, 1981 that a custody issue was pending in the State of Washington. The procedure which should have been followed is set forth at 42 Pa.C.S. § 5347(c). It is there provided:

(c) Stay; communication with other court.  If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with sections 5360 (relating to hearings and studies in another state; orders to appear) through 5363 (relating to request for court records of another state). If a court of this Commonwealth has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum.