Nicholas Lynn **HANSON**, Appellant,

v.

**Mavis Denise Hanson LECKEY, Appellee.**

**No. 12–86–00155–C.**

Court of Appeals of Texas, Tyler.

May 27, 1988.

Rehearing Denied July 11, 1988.

Richard R. Orsinger, Heard, Goggan & Blair, Williams & Harrison, San Antonio, for appellant.

Brad Dixon, Parsons & Thorn, Palestine, for appellee.

SUMMERS, Chief Justice.

Upon consideration of appellant's motion for rehearing, we withdraw our original opinion delivered in this cause on December 29, 1987, and substitute therefor the following.

This is an appeal from an order of a Texas district court granting appellee's application for writ of habeas corpus for the return of a child under Tex.Fam.Code Ann. § 14.10 (Vernon 1986), and further granting a judgment for attorney's fees and costs against appellant and a temporary order limiting appellant's access to the child. We reform and, as reformed, affirm.

Appellee Mavis Denise Hanson Leckey (Leckey) and appellant Nicholas Lynn Hanson (Hanson) met and married in Emporia, Kansas, where they both resided. The only child of their marriage, a daughter, was born in Emporia in 1980. The couple moved to Colorado in 1982 so Hanson could attend bible college. Despite their temporary relocation, the couple continued to regard Emporia, Kansas, as their permanent residence. Leckey filed a suit for divorce in the Kansas district court in Emporia approximately four months after the move to Colorado. On July 22, 1983, the Kansas court granted the divorce and ordered joint custody of the minor daughter. Hanson's home, however, was made the child's principal residence. In July of 1984, Leckey moved to Palestine, Texas. Hanson, in December of that year, denied Leckey the Christmas child visitation provided for in the divorce decree.

Leckey immediately filed a motion in the Kansas court for a change of custody, or,

in the alternative, for change of principal residence of the child. After a four-day evidentiary hearing the Emporia district court on August 27, 1985, ordered a change in the principal place of residence of the child from Hanson's home to Leckey's home. Hanson appeared in person and by attorney and did not challenge the court's jurisdiction.

Pursuant to the modification decree, Hanson received a one-week visitation with the child which was to end no later than September 22, 1985. During that week, Hanson moved from Colorado to Blanco County, Texas. He openly defied the Kansas decree by refusing to release the child to Leckey.

Leckey filed an application for writ of habeas corpus pursuant to Tex.Fam.Code Ann. § 14.10 (Vernon 1986) in a district court in Anderson County. Under section 14.10(a) a person is entitled to have the child returned if the applicant can prove the existence of a valid court order. The application was granted. Two days after Leckey had filed the application, Hanson filed a suit affecting the parent/child relationship in Bexar County, Texas, seeking to relitigate custody. This effort to relitigate that issue came about two weeks after the Kansas court had considered the question and granted the modification decree.

Leckey was unable to locate Hanson for service of process in the Anderson County action. After the Bexar County district court abated the suit filed by Hanson in Bexar County, Hanson was then served with process in Leckey's Anderson County action. Following a hearing on Leckey's application for writ of habeas corpus, the Anderson County district court ordered the child returned to Leckey as required by the Kansas modification decree. The court also assessed attorney's fees and costs against Hanson and temporarily restricted Hanson's visitation with the child.

Hanson's first four points of error collaterally attack the Kansas modification decree asserting that the Kansas court lacked subject matter jurisdiction under the Kansas version of the Uniform Child Custody Jurisdiction Act, K.S.A. 38–1301 through 1326, to issue the modification decree.

■ Hanson argues, inter alia, that the Kansas decree is not entitled to full faith and credit for failure to comply with the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A. We do not agree. The PKPA (section 1738A) does not confer upon any court jurisdiction to litigate child custody. The Uniform Child Custody Jurisdiction Act (UCCJA) establishes custody jurisdiction for state courts, in an interstate situation. The PKPA provides for enforcement of custody decrees entered under the jurisdictional prerequisites set forth in that act. The PKPA does not prohibit a state under its own law from enforcing a custody decree of another state that is not enforceable under the federal act. *Neger v. Neger*, 93 N.J. 15, 459 A.2d 628, 640 (1983). We, therefore, must consider whether the Texas version of the UCCJA requires enforcement of the Kansas order.

■ The UCCJA provides four independent and equal grounds for a state to acquire jurisdiction over a child custody action. Those four grounds are: (1) home state; (2) significant connection/substantial evidence; (3) emergency; and (4) default. Kansas has adopted these jurisdictional provisions of the UCCJA without amendment.[1]

1. Kansas version; K.S.A. 38–1303, Jurisdiction Section:
(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of the child's removal or retention by a person claiming the child's custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) it is in the best interest of the child that a court of this state assume jurisdiction because

Leckey asserts that the Kansas court had jurisdiction under the significant connection/substantial evidence ground. The Texas version[2] of the UCCJA, however, departs from the uniform act and the Kansas version, and only permits a Texas court to rely upon the significant connection ground if no other state has jurisdiciton under the home state ground. Although Colorado was the home state of the child at the time of the commencement of the Kansas modification action, Texas law may still require recognition of the Kansas court's modification order. Tex.Fam.Code Sec. 11.-

63, a section of the UCCJA, states as follows:

The courts of this state shall recognize and enforce an initial or modification decree of a court of another state that had assumed jurisdiction under statutory provisions *substantially in accordance with this subchapter* or that was made under factual circumstances meeting the jurisdictional standards of this subchapter, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this subchapter. (Emphasis ours.)

(A) the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(3) the child is physically present in this state and (A) the child has been abandoned or (B) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise a child in need of care; or

(4) (A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is in more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.

(b) Except under paragraphs (3) and (4) of subsection (a), physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(c) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine the child's custody.

2. Texas version; Tex.Fam.Code Ann.Jurisdiction § 11.53 (Vernon 1986):

(a) A court of this state that is competent to decide child custody matters has jurisdiction to make a child custody determination by initial decree or modification decree or order if:

(1) this state:

(A) is the home state of the child on the date of the commencement of the proceeding; or

(B) had been the child's home state within six months before the date of the commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

(2) it appears that no other state would have jurisdiction under Subdivision (1) of Subsection (A) of this section and it is in the best interest of the child that a court of this state assume jurisdiction because:

(A) the child and his parents or the child and at least one contestant have a significant connection with this state other than mere physical presence in this state; and

(B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(3) the child is physically present in this state and:

(A) the child has been abandoned; or

(B) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or there is a serious and immediate question concerning the welfare of the child; or

(4) it is in the best interest of the child that this court assume jurisdiction and:

(A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with Subdivision (1), (2), or (3) of this subsection; or

(B) another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child.

(b) Except under Subdivisions (3) and (4) of Subsection (a) of this section, physical presence in this state of the child or of the child and one of the contestants is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(c) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

(d) Except on written agreement of all the parties, a court may not exercise its continuing jurisdiction to modify custody if the child and the party with custody have established another home state unless the action to modify was filed before the new home state was acquired.

Leckey argues that the provisions of the Kansas version are "substantially in accordance" and, as a result, section 11.63 requires Texas courts to enforce the Kansas order despite the fact that the Kansas court's jurisdiction could have only been based upon the significant connection/substantial evidence ground. We agree.

While no Texas court has addressed this particular issue, the Texas Supreme Court has emphasized the importance of recognizing and enforcing out-of-state child custody orders whenever possible. *Strobel v. Thurman*, 565 S.W.2d 238, 239 (Tex.1978). The Alaska Supreme Court in *Kimmons v. Heldt*, 667 P.2d 1245 (1983), under facts very similar to those in this case, held that an Alaska court should defer to a California court's earlier child custody order because the California version of the UCCJA was in substantial conformity with the Alaska act. In that case, the California court had jurisdiction under the significant connection/substantial evidence ground although Alaska was the home state of the child. The Alaska version, however, did not even include the significant connection/substantial evidence ground. In finding the California version was in substantial conformity, the Alaska Supreme Court noted, inter alia, that it was the Alaska version that differed from the uniform act and not the California version.[3] Additionally, the court emphasized that the purpose of the UCCJA was to ensure that custody was litigated in the state which offered the most evidence as to the best interest of the child. Finally, the court concluded that Alaska's nonrecognition of the substantial evidence/significant connection ground was not so sweeping a difference as to render California's version less than substantially conforming. *Kimmons*, 667 P.2d at 1249–50.

The drafters of the uniform act obviously included the modifier "substantially," to ensure that states that did not adopt the act in toto would recognize each other's decrees irrespective of individual amendments to the uniform act. We find that the Kansas act is "substantially in accordance" with the Texas version. Therefore, under Tex.Fam.Code Ann. § 11.63 we must recognize and enforce the Kansas modification order if the facts support the finding of jurisdiction under the significant connection/substantial evidence ground of the Kansas version.

■ After reviewing these facts, we find that the Kansas court did have jurisdiction under the significant connection/substantial evidence ground. The significant connection/substantial evidence ground is applied "to see that custody decrees are rendered in the state which can best decide the case in the interest of the child." *Hart v. Hart*, 236 Kan. 856, 858, 695 P.2d 1285, 1287 (1985). Both Leckey and Hanson were born in Kansas and reared in Emporia, Kansas. They married in Emporia in 1976. Their only child was born in Emporia in 1980. In August 1982, the couple moved to Colorado Springs, Colorado, in order that Hanson could attend school there. The record shows that while in Colorado, the couple continued to treat Emporia, Kansas, as their permanent home. Upon the couple's separation, four months after the move to Colorado, Leckey returned to Kansas but allowed the child to remain with Hanson in Colorado by agreement. Leckey filed for divorce in Emporia, Kansas, in April of 1983 and a district court there granted a divorce in July of 1983. The parents were given joint custody of the child with her principal place of residence with the father.

In July, 1984, Leckey moved from Emporia to Palestine, Texas. In December, 1984, Hanson refused Leckey her Christmas visitation with the child. Beginning on August 23, 1985, a four-day hearing was held in Emporia on Leckey's motion for change of custody. Hanson at no point challenged the jurisdiction of the Kansas court to modify its original order. Hanson appeared with counsel at the modification hearing.

At the time of the hearing, most individuals who were familiar with both parents

---

**3.** Similarly, in this case, the Texas version, rather than the Kansas version, differs from the Uniform Act.

and the child resided in Kansas. The mother had lived in Colorado for a period of only four months, and that was three years prior to the hearing. Neither the father nor the child had ever lived in Texas. Although the child had spent much of the previous three years in Colorado, she remained under the joint custody of her mother who resided in Kansas and later Texas. All earlier judicial proceedings concerning the child and the divorce had taken place exclusively in Kansas.

Even though a state is not the "home state" of the child at the time of modification, that state can exercise jurisdiction under the significant connection/substantial evidence ground. *Larsen v. Larsen,* 5 Kan.App.2d 284, 615 P.2d 806 *rev-denied,* 228 Kan. 807 (1980). We find that the Kansas court did have jurisdiction under the significant connection/substantial evidence ground. K.S.A. 38–1303(a)(2). Appellant's first four points of error are overruled.

■ Hanson's fifth point of error contends that the trial court abused its discretion by entering a temporary order of unlimited duration reducing appellant's periods of possession of the child to six hours on one day per month. Under Tex.Fam. Code Ann. § 14.10(c) (Vernon 1986), a court may issue any appropriate temporary order if there is a "serious immediate question concerning the welfare of the child."

There was no suit, motion, or pleading filed by either Leckey or Hanson alleging a serious immediate question concerning the welfare of the child and seeking to modify the Kansas decree. *Cf., Whatley v. Bacon,* 649 S.W.2d 297, 299–300 (Tex.1983). The sole issue before the court was either to grant or deny Leckey's application for habeas corpus for enforcement of the Kansas modification decree.[4] We conclude that the trial court was not authorized to enter the temporary order. Therefore, the temporary order restricting Hanson's visitation with the child is deleted from the trial

court's Order on Writ of Habeas Corpus. Hanson's fifth point of error is sustained.

■ Hanson's sixth point of error alleges that the trial court erred in granting Leckey judgment for $14,219.27 in attorney's fees. Appellant's brief bases this assertion upon several grounds. First of all, the appellant argues that attorney's fees would be improper if we were to reverse the trial court's judgment. We do not reverse. Secondly, appellant contends that "the law does not support a judgment ... for attorney's fees." We disagree. The award of attorney's fees is authorized by Tex.Fam.Code Ann. § 11.18(a):

> (a) In any proceeding under this subtitle, including but not limited to, Habeas corpus, enforcement and contempt proceedings, the court may award costs. Reasonable attorney's fees may be taxed as costs, and may be ordered paid directly to the attorney, who may enforce the order for fees in his own name.

■ The appellant further argues that this statute was not complied with since the judgment does not tax the attorney's fees "as costs." However, we do not find the language of that statute to require that attorney's fees be taxed "as costs." As noted by the Waco Court of Appeals in *Drexel v. McCutcheon,* 604 S.W.2d 430 (Tex.App.—Waco 1983, no writ), "[t]he language of this statute is permissive throughout its terms. It authorized an award of attorney's fees and it permits the taxing of the award of costs, but it does not require that attorney's fees be awarded nor that they be taxed as costs." *Drexel,* 604 S.W.2d at 433.

Thirdly, the appellant contends that the trial court's findings of fact and conclusions of law do not support the award of attorney fees in that neither expressly states the fee amount was "reasonable and necessary." However, since the trial court awarded attorney's fees pursuant to section 11.18(a) which requires a finding that the expenses be "reasonable and neces-

---

**4.** The temporary order issued by the trial court provided that the "restriction of visitation shall remain in effect until *further order."* (Emphasis theirs.) This is essentially a permanent visi-

tation order, with no specified time by which the order will expire, and no provision for a hearing thereon.

sary," such a conclusion is implied by the court's finding that such award was proper.

The fourth basis for appellant's sixth point of error is that the evidence was legally and factually insufficient to support the attorney's fees awarded. We disagree. The appellee's attorney testified that his fees were reasonable and necessary and offered detailed time slips into evidence which itemized his work on the Leckey's case. Hanson presented no probative evidence to the contrary. Considering only the evidence and inferences tending to support the trial court's award of $14,219.27 in attorney's fees, we conclude there is evidence of probative force to support the award. Furthermore, considering all the evidence, we conclude the award is not so against the great weight and preponderance of the evidence as to be manifestly unjust. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). Hanson's sixth point is overruled.

In his seventh point of error, Hanson contends the trial court erred in issuing its judgment because there is no evidence or, alternatively, insufficient evidence to support certain findings of fact essential to the court's judgment. Hanson challenges eleven findings of fact by the trial court. Findings 1, 3, 4, 9, and 13, all challenged by Hanson, concern jurisdictional findings fully considered previously in this opinion. Considering only the evidence and inferences tending to support these findings, we conclude there is some evidence to support each of these findings. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). Furthermore, considering all the evidence, we conclude the evidence is factually sufficient to support each of these findings. *Id.* at 823.

Hanson's challenges to findings 5, 6, 7, 8, and 12 all concern the temporary order issued by the trial court. Since we have deleted that temporary order from the trial court's judgment, we need not consider these findings. The final challenged finding, number 11, concerns the attorney fees and has been fully considered previously in this opinion. Considering only the evidence and inferences tending to support this find-

ing, we conclude there is some evidence to support the finding. *Id.* at 823. Furthermore, considering all of the evidence, we conclude the evidence is factually sufficient to support this finding. *Id.* at 823. Hanson's seventh point of error is overruled.

Hanson's final point of error contends that the trial court's conclusions of law are an incorrect application of the law. We disagree. We have already considered the legal issues raised in this case and conclude that the trial court made a correct application of the law except as to the temporary order. The point is overruled.

The judgment of the trial court is reformed by deleting the temporary order restricting Hanson's visitation with the child; as reformed, the judgment is affirmed.