Janie S. MARQUISS, Appellant
(Defendant),

v.

Gary C. MARQUISS, Appellee
(Plaintiff).

No. 90–184.

Supreme Court of Wyoming.

July 7, 1992.

Rehearing Denied Aug. 18, 1992.

John A. Coppede and Lawrence A. Yonkee, Redle, Yonkee & Toner, Sheridan, for appellant.

Dwight F. Hurich of Preuit, Sowada & Hurich, Gillette, for appellee.

Before THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ., and KALOKATHIS, District Judge.

URBIGKIT, Justice.

This court reviews a complex and highly-charged post-divorce child custody and visitation conflict which provides a general jurisdictional field of inquiry.[1] The dispositive questions are: (1) whether a Wyoming divorce court has jurisdiction to enforce a non-custodial father's visitation rights when the custodial mother and the litigants' children have resided out-of-state for five years; and (2) if so, how?

---

\* Chief Justice at time of conference.

1. Although factually distinguishable from the present case, we empathize with the Mississippi Supreme Court's reasoning in *Curtis v. Curtis*, 574 So.2d 24, 25 (Miss.1990):

This case is of a genré that tests the law's capacity to regulate human behavior. Interstate parental kidnappings following family breakups have been a scourge upon society. A decade ago the federal government and then this (and every other) state enacted comprehensive laws designed to end interstate jurisdictional wars wherein the courts of the several states had treated kidnapped children like cross-country ping pong balls.

This case presents a classic case of the parental and judicial behavior the statutes were designed to and do proscribe. A valid Utah decree granted custody of four children to their mother. Ten weeks later, the father took advantage of his weekend visitation and wrongfully brought the children to Mississippi and enlisted the aid of this state's courts to give him custody. The children have since been caught in the middle of a tug of war.

We hold the Utah courts never lost jurisdiction of the matter of the permanent custody of the children. With this we adjudge the legal issues tendered. In doing this almost three years after the fact, we have no illusion that we have ability to put Humpty Dumpty back together again. We hope from this fall all may know of our seriousness of purpose that the law's injunction be respected.

*See also Curtis v. Curtis*, 789 P.2d 717 (Utah App.1990). Sometimes adulthood appears to be the only answer for visitation conflict.

We affirm the district court's jurisdictional authority to issue a civil contempt citation to enforce the father's visitation rights. We affirm the district court's order requiring delivery of the children to Wyoming for visitation as a proper exercise of discretion under the court's continuing jurisdiction as the divorce decree state. We accept the father's constructive stipulation in his appellate brief that the mother was improperly assessed attorney's fees and, as a result, we reverse that portion of the district court order. Finally, we determine that a provision in the district court order stating that a warrant *would* be issued for the mother's arrest *if* she failed to either bring the children to Wyoming or to show cause why she should not be required to do so does not constitute a final order and, consequently, is not subject to present appeal.[2]

## I. FACTS

This case combines the concerns of a divorced husband and wife who cultivate all of the unreasonableness which is too often produced by domestic intranquillity. Janie S. Marquiss (mother) and Gary C. Marquiss (father) were married in Wyoming on August 23, 1973. Two sons, Christopher Scott Marquiss and Merritt Lee Marquiss, were born during the marriage which ended by a 1984 Campbell County, Wyoming divorce decree. The mother, in contesting the father's petition, was awarded custody, while the non-custodial father received explicitly-stated visitation rights providing:

THE COURT DOES FURTHER FIND AND HEREBY ORDERS that both parties are fit and proper persons to have the care, custody and control of the parties['] two minor children. It is, however, hereby decreed that the [mother] shall have the general care, custody and control of the parties['] minor children, subject, however, to reasonable visitation rights in the [father]. Reasonable visita-

tion for the [father] shall include alternate major holidays to coincide with school vacation times, including Easter, Thanksgiving and the Christmas–New Years holiday period. IT IS FURTHER HEREBY ORDERED that the [mother] is to have the minor children with her for the 1984 Christmas and New Year holiday and that the [father] is to have the minor children with him for the 1984 Thanksgiving holiday. IT IS FURTHER ORDERED that the children's birthdays are to be included among the alternate major holidays hereinabove set forth, provided, however, that the exercise of such visitation does not unduly interfere with the children's schooling.

AND IT IS FURTHER HEREBY ORDERED that for the summer of 1984, the [father] shall have the minor children with him for the last week of June and the full month of July, and IT IS FURTHER ORDERED that for all summers beginning with 1985, that the [father] shall have the minor children with him for a period of six weeks during the summertime, said time to be between June 15th and August 15th of each year, subject however during such times to reasonable rights of visitation in the [mother].

AND IT IS FURTHER HEREBY ORDERED that the [father] shall be entitled to have the children with him for two (2) weekends per month, beginning at 5:00 o'clock p.m. on Friday and continuing until 5:00 o'clock p.m. on Sunday.
* * *

* * * * * *

AND IT IS FURTHER HEREBY ORDERED that the Court shall retain continuing jurisdiction over the parties and the subject matter of this action for purposes of enforcing this Decree of Divorce and for purposes of exercising continuing jurisdiction over matters of alimony,

---

**2.** It is obvious from the briefs that the mother did not comply with the district court's June 27, 1990 order that on or before June 30, 1990 she either deliver the children to Wyoming or, in the alternative, show cause why she should not

be required to do so. There is nothing in the record to indicate that the district court ever actually issued a warrant for the mother's arrest.

child custody and support and related matters.

Soon after the divorce, the two boys moved with their mother to Texas where she resumed her career as a home demonstration agent for the Texas Department of Agricultural Extension Service. The father, a Wyoming rancher, remarried and thereafter maintained a continuous Wyoming residency. This protracted battle started when the divorce decree visitation provision was not honored by the mother following her move to Texas with the children shortly after the divorce and has, for almost eight years, never abated.

## II. PRIOR PROCEEDINGS

In 1985 the father travelled to Texas to get his children for a visit to Wyoming, but was not allowed to see them. Upon returning home, he filed a motion in the Wyoming district court which had jurisdiction over his divorce for an order to show cause why the mother should not be held in contempt. Citing Wyoming's Uniform Child Custody Jurisdiction Act (UCCJA), Wyo.Stat. §§ 20–5–101 through 20–5–125 (1987), and the federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A (1989), the mother resisted with a motion asking the district court to dismiss the father's show cause motion and to decline jurisdiction in favor of a Texas court. In the alternative, she requested that the Wyoming district court vacate the hearing scheduled for her to show cause pending the outcome of her Tyler County, Texas District Court motion to modify the divorce decree and for a restraining order.[3] Finally, the mother filed a petition in the Wyoming court to modify the divorce decree via

a request for a restraining order and discontinuance of the father's right of visitation.

The Wyoming district court refused to decline jurisdiction and, instead, ordered the mother to bring the children to Wyoming. The order included a provision for a June 18, 1985 hearing on the order to show cause. With the children present in Wyoming when the mother appeared at the hearing, the district court granted the father summer visitation rights. Later that fall, the father and mother stipulated to the following:

Janie S. Marquiss and Gary C. Marquiss agree that all previously ordered visitation shall be abided by the parties. To clarify the visitation as to the holidays, the parties agree that Gary C. Marquiss shall have the Christmas/New Years Holiday to coincide with the school vacation in 1985 and that Janie S. Marquiss shall have the Thanksgiving 1985 holiday vacation and the Easter/Spring Break vacation in 1986. In 1986 Gary C. Marquiss will have the Thanksgiving holiday vacation and in 1987 the Easter/Spring Break vacation whichever is longer and Janie S. Marquiss shall have the Christmas/New Years holiday in 1986. The parties shall alternate holiday vacations thereafter. The parties shall alternate the children's birthdays if practical.

The stipulation was followed by a conforming order to dismiss which provided:

This matter having been set down for hearing on August 16, 1985 and prior to that time the parties having entered into a stipulation whereby [mother] is agreeing to dismiss her petition and to provide

---

**3.** The record shows copies of unauthenticated documents that the mother retained Texas counsel to prepare several instruments, including a "Motion to Modify in Suit Affecting the Parent–Child Relationship" and a "Temporary Restraining Order and Order Setting Hearing for Temporary Orders." In response, the father (also represented by Texas counsel) prepared a document entitled "Respondent's Original Answer." Apparently, all of these documents were to be filed in the district court of Tyler County, Texas. However, copies of these documents contained in this record were never file stamped by the Texas court and none were ever executed by a

presiding judge. Thus, there is nothing in the record to indicate that an order modifying the divorce decree was ever initiated, considered or entered by the Texas court. Absence of certified or authenticated court records is for our purpose preclusive that no definitive Texas order was entered. Speculation on probabilities suggests that probably the proceeding was started but not favorably resolved to favor the mother for one reason or another. Otherwise, with the careful counsel involved, we would no doubt have a copy of the appropriate court order.

for counseling and as the court has other concerns beyond the stipulation,

IT IS THEREFORE HEREBY ORDERED that the Petition to Modify the Divorce Decree filed by Janie S. Marquiss shall be and is hereby dismissed without prejudice.

IT IS FURTHER ORDERED that the parties shall abide by all previously ordered visitation.

IT IS FURTHER ORDERED that Gary C. Marquiss shall have the Christmas/New Years Holiday to coincide with the school vacation in 1985 and that Janie S. Marquiss shall have the Thanksgiving 1985 holiday vacation and the Easter/Spring Break vacation in 1986. In 1986 Gary C. Marquiss will have the Thanksgiving holiday vacation and in 1987 the Easter/Spring Break vacation whichever is longer and Janie S. Marquiss shall have the Christmas/New Years holiday in 1986. The parties shall alternate holiday vacations thereafter. The parties shall alternate the children's birthdays if practical.

IT IS FURTHER ORDERED that the [mother] be evaluated by a licensed psychologist or psychiatrist and the evaluation report to be sent to the court and counsel within four (4) months of the date of this order. The counselor shall address the issues as to whether or not Janie S. Marquiss is stable enough to be the custodial parent of the boys and further whether or not she is emotionally mature enough and able to insulate the children from her trauma as a result of the divorce. Janie S. Marquiss is to bear the expenses of the evaluation.

IT IS FURTHER ORDERED that all psychiatric reports shall be sealed subject to court order.

IT IS FURTHER ORDERED that the minor children of the parties, * * * are to continue in counseling at least bi-monthly as long as the counselor feels it is necessary. [The father] is to bear the expenses of said counseling.

IT IS FURTHER ORDERED that Gary C. Marquiss and Janie S. Marquiss are to get additional counseling as is needed and prescribed as a result of the evaluations that have been performed and will be performed in the future. In addition to the counseling, Gary C. Marquiss is to take the parent effectiveness class offered by the Juvenile Planning Counsel * * * within the next three (3) months. Further, Janie S. Marquiss is to take an equivalent class if offered in the area of her residence or read the book *Parent Effectiveness Training* or its equivalent within the next three months.

Despite the stipulated intentions of the parents and the 1985 conforming order, it appears that the father has not enjoyed visitation privileges with his sons since 1986.[4]

## III. THE CURRENT SESSION

Because of the mother's apparent continued refusal to permit visitation, the father moved the Wyoming district court for another order to show cause on April 30, 1990. On May 2, 1990, the district court issued a show cause order to be served on the mother in Texas. The order stated in part:

> This matter having come before the Court upon the Motion and Affidavit of the [father], praying for an Order requiring that the [mother] appear and show cause why she should not be held in Contempt of Court for her willful failure

---

4. It is unclear from the record to what extent the lack of paternal visitation since 1986 is primarily attributable to the mother's denial of visitation or the father's failure to aggressively pursue his visitation rights.

The record contains an August 15, 1988 "Order to Show Cause" executed by the Campbell County Judicial District Court. The court ordered the mother to appear on September 15, 1988 to show cause why she should not be held in contempt for willful disobedience of the di-

vorce decree. Also included in the record is an affidavit of service on the mother in Texas dated August 19, 1988. On September 14, 1988 the district court ordered that the September 15, 1988 hearing be vacated because the parties had settled the matter.

Neither party mentions the significance of these 1988 proceedings in appellate briefing. The non-visitation result is inexcusable; assessment of blame between the parents is initially a trial court responsibility.

to obey the Decree of Divorce entered in this matter, and the Court being advised in the premises, and good cause shown therefore:

IT IS THEREFORE ORDERED that the [mother] shall appear before the above named Court in the Campbell County Courthouse at Gillette, Wyoming on the 19th day of June, 1990 at the hour of 2:00 o'clock P.M. then and there to show cause, if she has any, why [the mother] should not be adjudged guilty of Contempt of Court and punished accordingly for willful disobedience of the Decree of Divorce entered in this matter which the Order and the disobedience of the [mother] are more fully described in the Affidavit of the [father], filed and contained in the Court files.

The mother responded with a motion to dismiss. In addition to asserting several technical objections, she contended that the order to show cause failed to state a claim and that the district court lacked jurisdiction in the proceeding. She elected not to appear for the June 19, 1990 show cause hearing, but she was represented at the hearing by counsel. She also filed a supporting memorandum with the district court the day after the scheduled show cause hearing, which stated in part:

Furthermore, Texas is the "home state" of the children under the provisions of the Uniform Child Custody Jurisdiction Act. W.S. § 20–5–101 et seq. It is held that the provisions of a divorce decree remain open throughout the minority of the children involved, and the District Court granting the divorce retains continuing jurisdiction to the custody aspect of the decree, *Nicholaus v. Nicholaus*, Wyo. 756 P.2d 1338 (1988); however, the Child Custody Act provides that litigation concerning the custody of children should take place in the state in which the children have the closest connection and where significant evidence concerning care, protection, and personal relationships is most readily available. In this case a Wyoming court should decline to exercise jurisdiction regarding the Marquiss children who have been residents of Texas since August 1984.

Relying on the continuing jurisdiction provisions of the PKPA, 28 U.S.C. § 1738A, the district court denied the mother's motion to dismiss and issued the following order on June 27, 1990:

JUDGMENT, ORDER OF CONTEMPT, ORDER DENYING MOTION FOR CONTEMPT AND ORDER TO PROVIDE VISITATION

This matter having come on for hearing upon the Plaintiff's Motion for Order to Show Cause this 19th day of June 1990. The [father] being present, represented by his attorney, * * *, the [mother] having failed to appear but represented by her attorney, * * *. The court after hearing the evidence finds as follows:

1. That a motion was filed on April 30, 1990 requesting an Order to Show Cause accompanied by * * * an affidavit.

2. An Order to Show Cause was issued to Janie S. Marquiss on May 2, 1990, directing Janie Marquiss to appear on June 19, 1990 in Campbell County, Wyoming before this court.

3. That the motion was served on Janie Marquiss in the State of Texas personally on May 22, 1990.

4. Janie S. Marquiss has failed to appear as ordered in the Order to Show Cause and, therefore, is in contempt of this court.

5. That [the father's] attorney's fees in the sum of seven hundred seventy-two dollars and fifty cents ($772.50) should be paid by the [mother] to the [father].

IT IS THEREFORE HEREBY ORDERED that * * * Janie S. Marquiss is in contempt of this court for failing to appear on the Order to Show Cause as ordered by this court.

IT IS FURTHER ORDERED that * * * Gary C. Marquiss, shall have judgment against Janie S. Marquiss, * * *, in the sum of seven hundred seventy-two dollars and fifty cents ($772.50) for attorney's fees.

The court further finds that based on the evidence offered by the [father], that

Janie S. Marquiss has not willfully violated the court's decree, but that there has been sufficient evidence presented to the court to raise the court's suspicions as to Janie S. Marquiss's motives.

IT IS THEREFORE HEREBY ORDERED IN THE ALTERNATIVE that Janie S. Marquiss produce the minor children of the parties, * * * for visitation with the [father] no later than June 30, 1990 by producing the children in Campbell County, Wyoming. Upon delivery of the minor children by the [mother] to the [father], [the father] shall reimburse the [mother] for costs of transportation. In the alternative, Janie S. Marquiss may appear before this court and show cause no later than June 30, 1990 as to why she should not comply with this order. Failing to produce the children or show cause why she should not comply, this court will issue a warrant for her arrest.

It is from this order that the mother appeals.

## IV. ISSUES

The mother presents the following issues for review:

### I.

Whether the sanction imposed by the district court's order of June 27, 1990, amounted to an order of criminal contempt rendering it null and void for lack of subject matter jurisdiction because in adjudicating whether the appellant should be found in contempt of court for failing to appear at a scheduled show cause hearing the district court failed to follow Rule 41(b) of the Wyoming Rules of Criminal Procedure

A. Whether the district court's June 27, 1990, order of contempt was criminal in nature because by lacking a "purge clause" the order unconditionally punished the Appellant.

B. Whether in adjudicating the Appellant's alleged contempt for failing to appear at the June 19 hearing, the district court was required to follow Wyo. R.Crim.P. 41(b).

### II.

Whether the district court abused its discretion because it was without power to impose an unconditional sanction that inured to the benefit of a private party.

### III.

Assuming the district court's contempt citation is civil in nature, whether the court's order was arbitrary, capricious and an abuse[ ] of discretion because in summarily issuing the order the court deprived the appellant of property without procedural due process in violation of her constitutional rights under both the United States and Wyoming Constitutions

### IV.

Whether the district court abused its discretion when it ordered that the appellant send her children to Wyoming

A. Whether the district court could issue a civil contempt citation absent a finding that the Appellant wil[l]fully disobeyed the child visitation provisions of the divorce decree.[5]

The civil contempt citation referred to in "sub-issue A" of the mother's fourth issue fails to recognize that the district court issued the contempt citation *solely* because of the mother's failure to appear at the June 19, 1990 show cause hearing. The "absent willful disobedience" language in the district court order referenced in "sub-issue A" did *not* involve the failure-to-appear contempt citation; rather, it applied to the district court's perception of the mother's motives and behavior in hindering the father's visitation efforts.

---

5. In formulating her fourth issue, the mother confuses two distinct aspects of the district court's order. In this case, whether or not the district court has jurisdiction to exercise discretion in ordering the mother to send her children to Wyoming involves the court's statutory and equitable authority to enforce its own custody determination. Wyo.Stat. §§ 20–2–113(a) (1989); 20–5–103(a)(ii); and 20–5–112(b). *See also Gaines v. Doby,* 794 P.2d 566, 569 (Wyo. 1990); *Wardle v. Wardle,* 464 P.2d 854, 856 (Wyo.1970); and *Urbach v. Urbach,* 52 Wyo. 207, 226, 73 P.2d 953, 960 (1937) (the court possesses inherent equitable powers in child custody and visitation matters).

The mother also included a request for appellate attorney's fees.

In response, the father adopted the issues set forth by the mother. With regard to the mother's first three issues, the father stated:

> Appellee concedes that the court's finding Janie Marquiss in contempt for failing to appear on the June 19, 1990 hearing should be regarded as a criminal contempt rather than a civil contempt and that the court failed to follow the procedures in Rule 41(b) of the Wyoming Rules of Criminal Procedure. Appellee would request the Supreme Court to remand to the District Court to follow the procedures set forth in Rule 41(b) and give Janie Marquiss an opportunity to be heard on why she failed to appear on the June 19, 1990 hearing.

The father expressly contested the mother's fourth issue as well as her request for appellate attorney's fees.

## V. ANALYSIS AND RESOLUTION

This case achieves an unusual perspective in resolution. We begin by considering the fundamental aspects of the mother's fourth issue—jurisdiction and discretion for the divorce decree state court to enforce child visitation against a custodial parent who, with the children, has established residency in a different state following entry of a divorce decree. Next, we summarily dispose of the attorney's fee issue for present purposes on the basis of the father's concessions in his appellate brief. Finally, we decide whether a possible future arrest for contempt upon a failure to comply with a present court order seeking to enforce child visitation is a final order subject to appeal.

We follow the same standard of review enunciated in other child custody cases. In *Goss v. Goss*, 780 P.2d 306, 313 (Wyo.1989), we said that "[w]e will not disturb the decision of the trial court * * * in the absence of some serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion." *See also Deen v. Deen*, 774 P.2d 621 (Wyo.1989) and

*Fanning v. Fanning*, 717 P.2d 346 (Wyo. 1986).

### A. Visitation Enforcement Jurisdiction—Validity of the Contempt Citation—UCCJA and PKPA

This case does not involve an initial custody determination or subsequent custody modification; rather, the case involves the jurisdiction of a decree state district court to enforce non-custodial visitation. In order to determine a Wyoming state court's jurisdictional authority to enforce non-custodial visitation, we begin by taking a brief historical look at the legislation designed to resolve child custody problems.

#### 1. Historical Overview

Though we resolve the jurisdictional question in this case on the narrow basis of a divorce decree court's authority to enforce its own decree absent modification in another state, we necessarily begin our analysis by examining applicable state and federal laws governing child custody and visitation within the context of interstate enforcement.

Probably the foundational case investigating and discussing interstate responsibilities in custody and visitation was authored by California Supreme Court Justice Tobriner in *Ferreira v. Ferreira*, 9 Cal.3d 824, 109 Cal.Rptr. 80, 512 P.2d 304 (1973). The decision was not based on either the UCCJA or the later-enacted PKPA, but defined its concept as "the courts have often observed, in resolving the issue '*The leitmotif* of all the cases of dealing with child custody is that the primary, paramount and controlling consideration is the welfare of the child.'" *Ferreira*, 109 Cal.Rptr. at 86, 512 P.2d at 310 (quoting *In re Walker*, 228 Cal.App.2d 217, 223, 39 Cal.Rptr. 243, 247 (1964)). Justice Tobriner further recognized:

> An across-the-board application of that principle, however, would compel California courts to re-examine foreign decrees on the merits *in all cases* in order to ascertain if those decrees promoted the best interests of the child. With jurisdiction conferred by the physical presence

of the child, this policy would denigrate the law of child custody in what Justice Jackson described as "a rule of seize-and-run." (*May v. Anderson* (1953) 345 U.S. 528, 542, 73 S.Ct. 840, 847, 97 L.Ed. 1221 (dissenting opn. of Jackson, J.)).

*Ferreira*, 109 Cal.Rptr. at 86, 512 P.2d at 310 (emphasis in original).

*Ferreira* was complicated by an Idaho divorce, a San Francisco, California Superior Court modification, subsequent residence in Alabama and Delaware and, finally, dual proceedings in San Francisco and Orange County in California. The appeal came from the San Francisco court's determination to dismiss based on *forum non conveniens* which the California Supreme Court determined to be in error. The temporary custody ordered by the Orange County Superior Court was approved and the proceeding in San Francisco, which was reversed, was transferred in venue to be consolidated for further proceedings. Finitely, the court determined:

> We conclude, therefore, that ordinarily the California court should exercise its discretion to issue a stay of the proceedings in this state to permit a final adjudication in the state of the parent entitled to custody under existing decrees. Having retained jurisdiction of the cause, the California court may then issue its writs to enforce that judgment.

*Ferreira*, 109 Cal.Rptr. at 92, 512 P.2d at 316.

It was within the perspective of retained jurisdictional discretion that the operative concepts of both the UCCJA and PKPA essentially developed. The concerns afforded by Justice Tobriner in 1973 remain equally persuasive almost twenty years later following enactment of the two pervasive sets of laws, one uniform by state enactment and the other preclusive by federal supremacy.

In response to the multitude of jurisdictional applications of full faith and credit and non-finality of custody concerns where dependent upon "best interest" examinations, the UCCJA has been enacted in all state jurisdictions. Am.Jur.2d Desk Book, Item No. 282 (1992). The principle provided by the Uniform Act accorded flexibility built around the children's "home state." *Wheeler v. District Court In and For City and County of Denver*, 186 Colo. 218, 526 P.2d 658 (1974); *In re LeMond*, 182 Ind. App. 626, 395 N.E.2d 1287 (1979); *Brooks v. Brooks*, 20 Or.App. 43, 530 P.2d 547 (1975); *McAtee v. McAtee*, 174 W.Va. 129, 323 S.E.2d 611 (1984); Sheldon R. Shapiro, Annotation, *Validity, Construction, and Application of Uniform Child Custody Jurisdiction Act*, 96 A.L.R.3d 968 (1979).

Wyoming adopted its version of the UCCJA in 1973. The Wyoming UCCJA confines jurisdiction only to matters pertaining to "custody determination." Wyo. Stat. § 20–5–104. "Custody determination" is defined in Wyo.Stat. § 20–5–103(a)(ii) as "a court order and instructions providing for the *custody* of a child including visitation rights, but does not include a decision relating to child support or any other monetary obligation of any person * * *." (Emphasis added.) *See also Rodgers v. Rodgers*, 627 P.2d 1381, 1384 (Wyo. 1981).

The PKPA, Wyoming Senator Wallop's insertion into a completely different law,[6] is essentially directed to finality and certainly contrary to the UCCJA's inherent changeability and the possibility of concurrent jurisdiction in more than one state. The federal act provides preeminence and equivalent predominance to the rendering (decree) state. Two different analyses are found concerning the relationship between the UCCJA and the PKPA; one of which is that the PKPA "strengthens" the Uniform

---

**6.** The PKPA was attached by an amendment sponsored by Senator Malcolm Wallop of Wyoming to the pneumococcal vaccine bill amending Title XVIII of the Social Security Act, PL # 96–611 and was then codified in part at 28 U.S.C. § 1738A. The proposed legislation had been the subject of an extensive comment and initial introduction and final enactment. *See*

Finding No. 7 of PL 96–611, 94 Stats 3566, 28 U.S.C. § 1738A, p. 8 appendix. For a historical discussion, see Henry H. Foster, *Child Custody Jurisdiction: UCCJA and PKPA*, 27 N.Y.L.Sch. L.Rev. 297 (1981). Compare, however, the earlier historical perspective in Leonard G. Ratner, *Child Custody in a Federal System*, 62 Mich. L.Rev. 795 (1964).

Act and the other is that it substantially alters the state statutes under the supremacy clause of the United States Constitution jurisdictional aspect of federal law. Ann M. Haralambie, Handling Child Custody Cases § 9.11, at 121–22 (1983) (footnotes omitted) stated:

> The federal Parental Kidnapping Prevention Act of 1980 (PKPA) strengthens § 14 [of the UCCJA] by permitting modification in the second state only where the rendering state no longer has jurisdiction.
>
> Some courts have held that where a child and one contestant have established a new home state pursuant to § 3, the rendering court and the new home state court have concurrent modification jurisdiction. Some courts have gone further by holding that the original court loses its jurisdiction once the child acquires a new home state. This view, however, is a minority position.
>
> The so-called *Bodenheimer theory* [a principal author of the UCCJA] interprets § 14 as positing exclusive modification jurisdiction in the rendering state unless the rendering state has declined to exercise jurisdiction. This view has been followed by the majority of jurisdictions.
>
> The PKPA has adopted the Bodenheimer theory, applying the exclusive jurisdiction provisions as a matter of federal law even to the few states which have not adopted the UCCJA. However, in order to merit such treatment, the rendering court must have acquired its original jurisdiction consistent with the federal requirements.

Further analysis is found in Jane Moran, *The Uniform Child Custody Jurisdiction Act: An Analysis of Its History, a Predic-tion of Its Future*, 84 W.Va.L.Rev. 135, 137–38 (1981):

> State court decisions demonstrate a high history of inconsistent law, conflicting decisions on an often unpredictable and arbitrary approach by judges in their search for a custody jurisdiction formula serving the best interests of the child and of the contestants. Too often the decisions indicate that the court's sympathy was swayed more by the ongoing battle of the parents then by the needs of their child.

The PKPA, 28 U.S.C. 1738A, quoted in full text by the court in Appendix A to *Quenzer v. Quenzer*, 653 P.2d 295, 306–08 (Wyo.1982), *cert. denied*, 460 U.S. 1041, 103 S.Ct. 1436, 75 L.Ed.2d 794 (1983), provides in specific detail:

> "(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.
>
> (b) As used in this section, the term—
>
> * * * * * *
>
> (3) 'custody determination' means a judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes a permanent and temporary orders, and initial orders and modifications; [7]
>
> (4) 'home State' means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period; [8]

---

7. Thus, both the UCCJA and the PKPA specify the circumstances under which a court has jurisdiction to make a child "custody determination." Wyo.Stat. § 20–5–103(a)(ii). *See also Kumar v. Superior Court of Santa Clara County*, 32 Cal.3d 689, 186 Cal.Rptr. 772, 652 P.2d 1003 (1982); *Funk v. Macaulay*, 457 N.E.2d 223 (Ind. App.1983); *Matter of Custody of Bhatti*, 98 N.C.App. 493, 391 S.E.2d 201 (1990); and Bar-bara Ann Atwood, *Child Custody Jurisdiction and Territoriality*, 52 Ohio St.L.J. 369 (1991).

8. In order to understand apparent and actual conflict in case decisions, the appearance of dysfunctional terminology provides some cause for confusion. That confusion results from the failure to distinguish the original home state which is also the decree state from the present home state where the child or children are now

(5) 'modification' and 'modify' refer to a custody determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody determination concerning the same child, whether made by the same court or not;

\* \* \* \* \* \*

(7) 'physical custody' means actual possession and control of a child; and

\* \* \* \* \* \*

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

\* \* \* \* \* \*

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

(e) Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child.

(f) A court of a State may modify a determination of the custody of the same child made by a court of another State[.]"

2. Case Law and Analysis—Decree State—Original Home State— Present Home State

It is recognized that within the supremacy attribute of federal law, the enactment of the PKPA generally eliminated concurrent jurisdiction by conferring exclusive modification jurisdiction to the decree state which was originally the home state.

The P.K.P.A. is not a radical departure from the U.C.C.J.A.; in fact, the two acts are similar if not identical on a number of points. Significant differences exist, however, because the P.K.P.A. was drafted, in part, to fill the gaps which existed under the U.C.C.J.A.

The key distinction between the two acts is that under the U.C.C.J.A., the existence of any one of the conditions set forth in subsections (c)(2)(A), (B)(ii), (C) or (D) of the P.K.P.A. is sufficient to confer jurisdiction upon a state court. As a result, there may be concurrent jurisdiction between two states.

Subsection (c)(2)(B)(i) of the P.K.P.A. eliminates the possibility of concurrent jurisdiction by conferring exclusive modification jurisdiction upon the home state of the child (i.e., *the state which rendered the initial decree*). That subsection, coupled with the continuing jurisdiction provision of subsection (d), reflects a

---

in residence. The decree state is variously referred to as the decretal state, state of initial decree and, erroneously on occasion, as the home state when it no longer has that status. We will use the term (although obviously not completely proper English) decree state for consistency of language in the opinion.

The home state is transitory, changing with each new jurisdiction where the child or children move to reside. The decree state is reasonably fixed, but a presently valid decree state can be different from the original decree state if no significant contacts remain in the original jurisdiction which entered the custody order or there is a relinquishment of jurisdiction which can create a second valid decree jurisdiction.

In this opinion, the decree state is Wyoming where home state existed when the divorce decree was entered, where one parent continues to live and jurisdiction has not been relinquished. Present home state is Texas where the mother and children have continually resided since leaving Wyoming shortly after the divorce. In jurisdictional concepts of movement of families, witness *Quenzer*, 653 P.2d 295, this is a simple case involving multiple jurisdictional involvement. See also a case identical in jurisdictional application to this present proceeding, *McArthur v. Superior Court (Wells)*, 235 Cal.App.3d 1287, 1 Cal.Rptr.2d 296 (1991). Because of its complexity, *Quenzer* received extensive consideration and case comparison examination in 1 Homer H. Clark, The Law of Domestic Relations ch. 13, at 820 (2d ed. 1987).

bias on the part of the P.K.P.A. in favor of the home state. The P.K.P.A. is a departure from the jurisdictional requirements of the U.C.C.J.A. and this departure is critical to the efficacy of the new Act because a state court may no longer modify existing decrees of other states pursuant to the various and flexible bases of jurisdiction provided in the U.C.C.J.A. Instead, in order to modify a decree, the home state must no longer have jurisdiction or must have declined to exercise such jurisdiction.

Scott T. Dickens, Note, *The Parental Kidnaping Prevention Act: Application and Interpretation,* 23 J.Fam.L. 419, 426 (1984–85) (emphasis added and footnotes omitted). For a similar analysis, see Russell M. Coombs, *Interstate Child Custody: Jurisdiction, Recognition, and Enforcement,* 66 Minn.L.Rev. 711, 853 (1982).[9]

The dichotomy between home state and state of original jurisdiction was forcefully dissected in *Voninski v. Voninski,* 661 S.W.2d 872 (Tenn.App.1982). The case considered a New York divorce and subsequent home state status in Tennessee with a proceeding to modify visitation later pursued in both states. The Tennessee court examined the 1980 PKPA in conjunction with the UCCJA and the state law of both New York (decree state) and Tennessee (present home state). The court recognized that under the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, § 2, the PKPA "establishes a policy of federal pre-emption in the area of custody jurisdiction." *Voninski,* 661 S.W.2d at 876. The application of the UCCJA and the PKPA made in *Voninski* was called into question regarding the decree state primacy and it was effectively superseded by

adoption in *State ex rel. Cooper v. Hamilton,* 688 S.W.2d 821 (Tenn.1985). *See also* Steven M. Schuetze, Note, *Thompson v. Thompson, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988): The Jurisdictional Dilemma of Child Custody Cases Under the Parental Kidnapping Prevention Act,* 16 Pepperdine L.Rev. 409 (1989).

There are three Wyoming cases that require review; reconciliation is not possible. The first was *State ex rel. Klopotek v. District Court of Sheridan County,* 621 P.2d 223 (Wyo.1980) (decided December 10, 1980). The PKPA became effective December 28, 1980 (or a later date since there is confusion in the statute) so that *Klopotek* to the extent of any discussion included in decision is subject to supersession by the subsequent federal statute. Actually, the result in the case is not particularly inconsistent, but the federal statute was obviously not discussed since not then effective.

The second case, which is well cited in literature and as precedent in other cases, is *Quenzer,* 653 P.2d 295, authored by Justice Thomas, in which the PKPA was liberally cited and specifically added in *haec verba* as Appendix A.

There is a third case more recently written which also comes within the scope of law covered by the preclusive PKPA—*Rosics v. Heath,* 746 P.2d 1284 (Wyo.1987). *Quenzer* and the UCCJA are liberally cited in *Rosics,* but the determinative and preclusive PKPA is not mentioned. Law professors, students and some judges have failed to reconcile *Rosics* to either *Quenzer* or the PKPA.[10] We cannot either. This decision will be consistent with *Quenzer* in general, although a somewhat different factual situ-

---

**9.** Rather than resolving the disputed policy question concerning the duration of jurisdiction, Congress in the Wallop Act allocated control over the question to the state that had already determined custody of the child. There is no reason to suppose that any other state would be better qualified than the rendering state to decide when jurisdiction should shift from itself to another state. Allocating authority over this question to the law of the rendering state has the advantage that the rendering state is identifiable and singular.

Coombs, *supra,* 66 Minn.L.Rev. at 853.

**10.** Neither brief in *Rosics* cited the federal act (PKPA) in alternative reliance solely for decision on the earlier uniform state act, UCCJA, enacted as Wyo.Stat. §§ 20–5–101 through 20–5–125. This comment does not serve as an excuse, it is only a partial explanation. The confusion about what Wyoming law came to be was incidentally manifested in comment by counsel during this Marquiss trial hearing.

ation on jurisdiction was presented and expressly supersedes *Rosics* in regard to the unmentioned PKPA-defined retained decree state jurisdiction. In most recent time, we have added a fourth case, *State ex rel. Griffin v. District Court of the Fifth District*, 831 P.2d 233 (Wyo.1992).

### B. Contempt Citation.

■ The original custody decree is valid until superseded by a properly entered and finalized custody modification order by a court with jurisdiction. *Daily v. Dombroski*, 250 Ga. 236, 297 S.E.2d 246 (1982); *Curtis v. Curtis*, 574 So.2d 24 (Miss.1990). *See also Nicholaus v. Nicholaus*, 756 P.2d 1338 (Wyo.1988). This record does not show that any modification order, valid or invalid, had been entered by a Texas court at the time this current proceeding was heard and decided in Wyoming. *Daily*, 297 S.E.2d 246. *Accord Hanson v. Leckey*, 754 S.W.2d 292 (Tex.App.1988).

Where no modification is sought or obtained, the courts have consistently held that the UCCJA does not apply to contempt proceedings, generally reasoning that the Uniform Act does not affect a court's inherent power to enforce its own custody order. *See* Danny R. Veilleux, Annotation, *What Types of Proceedings or Determinations are Governed by the Uniform Child Custody Jurisdiction Act (UCCJA) or the Parental Kidnapping Prevention Act (PKPA)*, 78 A.L.R.4th 1028, §§ 14 and 15 (1990). *See also Daily*, 297 S.E.2d 246. Such is the case here.

> The ordinary method of enforcing custody and visitation rights is a contempt proceeding. For example, where a wife refuses to permit her husband to exercise his visitation rights she is guilty of an indirect contempt of court, and the husband may institute a civil contempt proceeding to enforce his rights. * * *
>
> \* \* \* \* \* \*
>
> Jurisdiction over contempt proceedings related to a child custody order remains in the court which had jurisdiction over the custody proceeding.

24 Am.Jur.2d, *Divorce and Separation*, § 997 at 990–91 (1983) (footnotes omitted).

■ Both subject matter and in personam jurisdiction must be present before a child visitation enforcement matter can be heard by a court. The Marquiss divorce decree stated that "the Court shall retain continuing jurisdiction over the parties and the subject matter of this action for purposes of * * * exercising continuing jurisdiction over matters of * * * child custody * * * and related matters." Wyo.Stat. § 20–5–106 provides for notice to be given to out-of-state parties prior to the exercise of decree enforcement or modification under the court's continuing jurisdiction. *See also* Wyo.Stat. § 5–1–107 (1977) (Wyoming's long-arm statute).

■ *Graham v. Fenno*, 734 P.2d 983 (Wyo.1987) involved a contempt proceeding for nonpayment of child support. We held that minimum contact principles of personal jurisdiction applied only to jurisdiction in the original divorce proceeding. We noted that a contempt action is an appropriate remedy for failure to make support payments pursuant to a divorce decree. *Graham* also points out that it is well-settled law in Wyoming that "once a court obtains proper jurisdiction, that court retains jurisdiction to modify or enforce support obligations provided for in the decree." *Id.* at 985. Once jurisdiction in a divorce action attaches, the district court's power over the defendant's person continues until all matters arising out of that litigation are resolved and is not lost by removal of the defendant from the state.

In a case with facts similar to the case at bar, the court in *In re Paternity of J.L.V.*, 145 Wis.2d 308, 426 N.W.2d 112 (1988) rejected a father's contention that the trial court did not have subject matter jurisdiction to impose sanctions for his contempt of court in response to his refusal to comply with visitation rights established in an earlier order. The parties were divorced in Wisconsin and the father was granted custody of the minor child and visitation rights were granted to the mother. The father moved to Texas with the child, cut off communications with the mother and, contrary to court orders regarding visitation,

would not allow the mother to have Christmas visitation. The mother filed motions for contempt and expanded visitation. The father was served and counsel for the father appeared at the hearing and objected to the court's subject matter jurisdiction. The trial court granted the mother's motion for contempt and denied the father's subsequent motion to dismiss. The appellate court found that the appeal did not involve a child custody determination or modification, but rather an enforcement proceeding because the court only granted the mother's motion for contempt. Therefore, a determination of jurisdiction under the Wisconsin UCCJA was unnecessary. In affirming, the court concluded that the trial court had jurisdiction to impose remedial or punitive sanctions on the father for contempt of court.

In *Levis v. Markee*, 771 S.W.2d 928 (Mo. App.1989), a Missouri appellate court held that a contempt hearing did not constitute a custody determination governed by the UCCJA. The court held that the lower court acted within its discretion in hearing a motion for contempt since it had continuing subject matter jurisdiction and the inherent power to enforce its own custody order. According to the appellate court, there was no determination regarding the child's best interests and thus no requirement for modification jurisdiction. The court concluded that there was a great difference between modification jurisdiction and enforcement jurisdiction, stating that modification jurisdiction involved holding an evidentiary hearing to determine a change in circumstances and the child's best interests, whereas enforcement jurisdiction was limited to determining whether a custody order was valid when entered. *See also In re Marriage of Corrie*, 32 Wash.App. 592, 648 P.2d 501 (1982).

Finally, in *Com. ex rel. Taylor By and Through Taylor v. Taylor*, 332 Pa.Super. 67, 480 A.2d 1188 (1984), the court, while acknowledging that the lower court had lost its jurisdiction to modify its prior custody order under the UCCJA, held that it did not lose its jurisdiction to enforce the prior custody decree. " 'There can be no question that courts have the inherent power-

er to enforce compliance with their lawful orders through civil contempt.' " *Id.* 480 A.2d at 1189 (quoting *Simmons v. Simmons*, 232 Pa.Super. 365, 369, 335 A.2d 764, 766 (1975)). If the original custody order was validly modified, then the court of original jurisdiction cannot enforce the initial custody order. On the other hand, however, if it was not validly modified then the original court can enforce the initial order.

In the present case, the validity of the original decree and custody determination is not contested. In addition, the question of whether or not the Wyoming district court had continuing subject matter jurisdiction of the underlying custody matter under the UCCJA for purposes of modifying custody is irrelevant to a determination of whether the Wyoming district court has continuing enforcement jurisdiction. If either party had petitioned the Wyoming district court for modification of the original decree, even to the extent of seeking to extend or clarify visitation rights, the district court would have been required to examine its jurisdictional basis. However, because no such modification was sought by either party, no examination under Wyo. Stat. § 20–5–104 was necessary. *Daily*, 297 S.E.2d 246. In any event, the PKPA controls and supports contempt jurisdiction for the Wyoming court. 28 U.S.C. 1738A(d). *See also Dobbins v. Maner*, 517 So.2d 619 (Ala.Civ.App.1987).

We conclude that the Wyoming district court, where the original decree was granted, had continuing subject matter and in personam jurisdiction to enforce its original visitation order by issuing an order to show cause why the mother should not be held in contempt for denying the father court-ordered visitation. As in *Graham*, 734 P.2d 983, we hold that the Wyoming district court retains in personam jurisdiction over the mother to enforce the visitation provisions of the original divorce decree through a contempt action even though she left the jurisdiction. *De La Pena v. Torrone*, 467 So.2d 336 (Fla.App. 1985) (a case with similar facts except in-

volving non-return instead of denied visitation). *See also Dobbins*, 517 So.2d 619. This decision is consistent, although postured with a different decree state status, with *State ex rel. Griffin*, 831 P.2d 233.

▬ Both parties in this case concluded that the district court's contempt citation was criminal in nature and, as such, failed to provide the requisite due process protections in W.R.Cr.P. 41(b) (now W.R.Cr.P. 42). We disagree and hold that the contempt was civil, not criminal, because the litigant could purge herself by either bringing the children to Wyoming for visitation or by appearing before the district court to show just cause why she refused to present the children for their period of visitation. *Dobbins*, 517 So.2d 619; *Hayes v. Hayes*, 472 So.2d 646 (Ala. Civ.App.1985). *See also Honan v. Honan*, 809 P.2d 783 (Wyo.1991). Failure of a parent to comply with visitation provisions of a divorce decree constitutes indirect civil contempt. *Jaramillo v. State*, 802 P.2d 872 (Wyo.1990); *Connors v. Connors*, 769 P.2d 336 (Wyo.1989).

The district court had continuing jurisdiction to enforce its original divorce decree by issuing a show cause order. Civil contempt is an appropriate judicial remedy for the mother's failure to attend the show cause hearing.

#### C. *Abuse of Discretion*

▬ After the mother failed to attend the June 19, 1990 show cause hearing and the district court found her in contempt, the court ordered her to either bring the children to Wyoming or, in the alternative, show cause by June 30, 1990 why she should not be required to do so. The mother contends that the district court lacked jurisdiction and thus abused its discretion when it issued the order absent a preliminary finding that she had willfully disobeyed the child visitation provisions in the divorce decree. In other words, the mother presents a circular argument which says in effect that the mother cannot be ordered to deliver the children until the court finds her "willfully disobedient," and, at the same time, the court cannot find her "willfully disobedient" until she refuses to deliver the children. We do not accept this reasoning.

▬ After the father's 1990 summer visitation period with his children was due to begin and since the mother was already in contempt for failing to attend the June 19, 1990 hearing to show cause, the district court order provided one of two means by which the mother could purge herself of the civil contempt citation. *See Levis*, 771 S.W.2d 928 (having been found in contempt for violating temporary child custody provisions, the custodial mother was required to pay the cost of an airline ticket to transport the child for visitation). The order requiring the mother to deliver the children to Wyoming was essentially part and parcel of the contempt proceeding and since the court had inherent power to enforce its own decree, the Wyoming version of the UCCJA, Wyo.Stat. §§ 20–5–101 through 20–5–125, does not apply to the contempt proceeding. *See Levis*, 771 S.W.2d at 931 and Annotation, *supra*, 78 A.L.R.4th at 1063.

"Our rule is that we can uphold the decision of a district court if it is sustainable on any theory supported by the record." *Goss*, 780 P.2d at 310. "The trial court does not abuse its discretionary authority if, under the circumstances found from the record, it could have reasonably concluded as it did." *Id.* at 313. The district court's order compelling the mother to bring the children to Wyoming constituted an appropriate attempt at enforcement of the father's visitation right.[11] The district

11. Where neither parent had previously secured a custody modification in either decree or present home state, Wyo.Stat. § 20–2–113(a) (1989) would control in this jurisdiction for procedure:

In granting a divorce or annulment of a marriage, the court may make such disposition of the children as appears most expedient and beneficial for the well-being of the children. The court shall consider the relative competency of both parents and no award of custody shall be made solely on the basis of gender of the parent. *Either parent may petition the court* to enforce or revise the decree. The court has continuing subject matter and personal jurisdiction to enforce or revise the de-

court's order in addressing benefit to the children was proper under the circumstances. *Bachand v. Walters*, 809 P.2d 284, 286 (Wyo.1991). There was no abuse of discretion.

## VI. ENFORCEMENT

Resolution of the district court jurisdiction still leaves explicit and implicit questions created by this appeal for future action required to enforce the court decree visitation provisions now unresolved for nearly eight years. If the mother does not adhere to this decision by arranging for visitation by the father, one ultimate risk to her can be loss of custody. Similarly, assuming voluntary compliance does not occur and she does not present herself in Gillette, Wyoming to answer the show cause order, including providing the two Marquiss sons for decree mandated visitation, general directions are indicated by the case law and adaptation of the federal and state statutory provisions.

■ Predominating is a general discretion of the trial court over any categorized or brightline approaches, concepts or requirements. *Uhls v. Uhls*, 794 P.2d 894 (Wyo.1990); *Yates v. Yates*, 702 P.2d 1252 (Wyo.1985). At the same time, statutory implementation and implications should provide direction. This includes the PKPA, the Wyoming code in general and, in particular, Wyo.Stat. §§ 20–5–101, 20–5–107, 20–5–108, 20–5–117 and 20–5–120. It should first be recognized that total discretion to address enforcement of the court order is not solely vested in the Wyoming court since the parent who has been denied visitation can alternatively elect to seek direct action in the present home state.

■ Remedies in the present home state would include enforcement by habeas corpus or full faith and credit proceedings based on the Wyoming decree. For a court to have jurisdiction in a habeas corpus proceeding for child custody, the children must either be physically present in the state, resident in the state, or be domiciled in the state. *Adriance v. Adriance*, 329 Pa.Super. 168, 478 A.2d 16 (1984). In addition to habeas corpus to be initiated in the Texas jurisdiction, *Mitchell v. Mitchell*, 437 So.2d 122 (Ala.Civ.App.1982); *Slidell v. Valentine*, 298 N.W.2d 599 (Iowa 1980), assuming no modification of the Wyoming decree has been pursued in that state, another available procedure is to file the Wyoming decree in the new home state and then pursue enforcement by contempt processes. *In re Marriage of Alush*, 172 Ill. App.3d 646, 122 Ill.Dec. 694, 527 N.E.2d 66 (1988); *Funk v. Macaulay*, 457 N.E.2d 223 (Ind.App.1983).[12]

■ A more invidious and decisive remedy in forum jurisdiction exists for the father to petition in Wyoming for the district court to exercise its discretion and amend the visitation and custody provisions provided by the divorce decree. Based upon contempt in non-compliance with the existing decree provisions for visitation, the amendment could terminate the mother's custody either in total or in part. *See, e.g., Steele v. Steele*, 250 Ga. 101, 296 S.E.2d 570 (1982); *Clark v. Clark*, 404 N.E.2d 23 (Ind.App.1980); and *State ex rel. Butler v.*

---

cree concerning the care, custody, visitation and maintenance of the children as the circumstances of the parents and the benefit of the children requires.

(Emphasis added.) Without a motion or other filing, the district court pursuant to Wyo.Stat. § 20–2–113(a), would not have had jurisdiction to modify sua sponte. *See Connors*, 769 P.2d at 349. Since this is not a modification case, the requirement for a petition or motion is not an issue presented here.

If it is conversely argued that the requirement to bring the children to Wyoming was a modification, the preclusive provisions of the PKPA would still apply to provide jurisdiction in the Wyoming court.

**12.** How far the Wyoming district court can go in effectively enforcing visitation until assisted by order of the Texas court remains a subject not comprehensively addressed here. *See Hanson*, 754 S.W.2d 292. The menu for enforcement was stated:

"It (a sister state's judgment) can be enforced by habeas corpus, contempt, injunction, a civil action, a petition or motion, or any other method available under the law of this state for the enforcement of a custody judgment rendered by a court of this state."

*Mitchell*, 437 So.2d at 126 (quoting *Wyatt v. Falhsing*, 396 So.2d 1069, 1073 (Ala.Civ.App. 1981)). *See also Haltom v. Haltom*, 755 P.2d 876 (Wyo.1988).

*Morgan,* 34 Or.App. 393, 578 P.2d 814 (1978). *Cf. Connors,* 769 P.2d 336.

 Initially, to supplement or augment this record, the decree state court should initiate contact with the new "home state" jurisdiction (Texas in this case). Such contact may be direct contact by the district court and its officers or indirect contact through advice and certification by counsel including the filing of appropriate stipulated or authenticated documentation reflecting the status and effect of any proceedings presently pending in another jurisdiction. Wyo.Stat. §§ 20–5–107(b) and (c) and 20–5–108. *See In re Marriage of Schmidt,* 436 N.W.2d 99 (Minn.1989). Interstate jurisdictional cooperation should be a primary effort before any actual modification of the visitation decree or general custody change as a last answer is undertaken.[13] *Matter of Appeal in Pima County Juvenile Action No. J–78632,* 147 Ariz. 584, 712 P.2d 431 (1986). *See also Waller v. Richardson,* 757 P.2d 1036 (Alaska 1988) and *Tiscornia v. Tiscornia,* 154 Ariz. 376, 742 P.2d 1362 (1987).

 Finally, before determining that an arrest warrant should actually issue, efforts which have been taken to achieve inter-jurisdictional accommodation provisions with the Texas court should be made a matter of record. Wyo.Stat. §§ 20–5–108; 20–5–102(a)(iv); 28 U.S.C. § 1738A(d). This accommodation and inquiry effort would be provident whether the Texas action is initiated by the father through a habeas corpus proceeding in that jurisdiction, *cf. Adriance,* 478 A.2d 16, by Wyoming decree enforcement, *Funk,* 457 N.E.2d 223, or, conversely, by the mother

in attempting to modify the Wyoming decree visitation rights in a Texas court without pursuing that course of claim to finality by an application in Wyoming where the original decree was written. *Matter of Custody of Bhatti,* 98 N.C.App. 493, 391 S.E.2d 201 (1990).

## VII. DECLINATION TO EXERCISE PRIMARY JURISDICTION

 Although it is clearly recognized that the PKPA amended the UCCJA by creating a decree forum state predominance, *Mitchell,* 437 So.2d 122, it should not be considered that for modification, Wyo.Stat. § 20–5–107 is rendered completely ineffective. Of even more significance, Wyoming jurisdiction as the decree court in seeking to remain informed can elect to decline to exercise jurisdiction under Wyo. Stat. § 20–5–108 in meeting the alternative condition of 28 U.S.C. § 1738A(f)(2) (declination to exercise jurisdiction to modify or by yielding to the new home state to enforce).

The courts have uniformly affirmed a trial court discretion to yield jurisdiction to a present home state, whether based on PKPA primacy decree jurisdiction, *Murphy v. Woerner,* 748 P.2d 749 (Alaska 1988),[14] or UCCJA concurrent jurisdiction. *Zellat v. Zellat,* 351 Pa.Super. 623, 506 A.2d 946 (1986) (where Pennsylvania yielded to a mother's new home state in Tennessee). There is also authority that even with jurisdiction as the decree state, the court should, at least initially, yield to the present home state. *Schlumpf v. Superior Court of Trinity County,* 79 Cal.App.3d 892, 145 Cal.Rptr. 190 (1978). For a "best

---

**13.** The trend of decisions in predominance of case law establishes that a discretional contact with the court of the present home state always exists as a choice by the court. *In re Marriage of Kehres,* 164 Ill.App.3d 148, 115 Ill.Dec. 206, 517 N.E.2d 617 (1987); *Zellat v. Zellat,* 351 Pa.Super. 623, 506 A.2d 946 (1986). Mandatory contact is required before an arrest warrant is issued which would otherwise constitute abuse of discretion. *Findley v. Findley,* 441 So.2d 1166 (Fla.App.1983); *Vanneck v. Vanneck,* 49 N.Y.2d 602, 427 N.Y.S.2d 735, 404 N.E.2d 1278 (1980). It may be that assistance of the Texas courts may inevitably be required if the mother neither permits visitation nor returns with the children

to Wyoming and an arrest warrant is subsequently issued. *Roberts v. Fuhr,* 523 So.2d 20, 29 (Miss.1987). This court has already forcefully spoken on inter-jurisdictional contact. *Quenzer,* 653 P.2d at 303.

**14.** Alaska Supreme Court Chief Justice Rabinowitz's dissent would have elevated to the statutorily stated "significant connection" to be something beyond continued residence of a parent and periodic visitation. *Murphy,* 748 P.2d at 750. His argument parallels the minority rule. *See Voninski,* 661 S.W.2d 872.

interest consideration," see *Clark v. Superior Court In and For Mendocino County*, 73 Cal.App.3d 298, 140 Cal.Rptr. 709 (1977). A contrary result to find abuse of discretion results if the trial court decision was apparently based on jurisdiction instead of discretion. *In re Marriage of McEvoy*, 414 N.W.2d 855 (Iowa App.1987); *In re Marriage of Corrie*, 648 P.2d 501.[15]

■■■ The factual basis for the decision to exercise predominant jurisdiction or the converse determination to abstain should be authenticated by a statement in the record for appeal purposes if further considered by this court and for the specific information of the present home state jurisdiction which should then be responsible to recognize and enforce the Wyoming decree except to the extent that a relinquishment for its more specific enforcement processes might be established. The home state jurisdiction which has the responsibility to recognize and enforce the Wyoming decree under the supremacy concept of 28 U.S.C. § 1738A continues to exist until the Wyoming court no longer has jurisdiction (e.g., neither parent nor the children live in Wyoming), or the Wyoming court declines to exercise jurisdiction to modify. *See State in Interest of D.S.K.*, 792 P.2d 118 (Utah App.1990). Alternatively, the original divorce forum state has discretion to yield to the present UCCJA/PKPA home state even when the inherent power to enforce through civil contempt remains. *Kirylik v. Kirylik*, 292 S.C. 475, 357 S.E.2d 449 (1987).

■■■ We would follow the direction delineated in *Arbogast v. Arbogast*, 174 W.Va. 498, 327 S.E.2d 675 (1984). That case presented an initial Kansas decree granting custody to the soon-to-become non-resident mother and awarded visitation to the Kansas residing father. After the mother left Kansas, every effort of the father to exercise visitation was rebuffed until finally the Kansas court changed custody to the father and divested the mother of visitation rights unless she would apply to the Kansas court. The mother refused to relinquish custody or provide for visitation, and the father sought enforcement in West Virginia where the mother then lived. The West Virginia trial court rejected its enforcement authority of the modified Kansas decree. The issue on appeal was enforcement of that modification and change of custody under the purview of the West Virginia UCCJA and the federal PKPA legislation. The West Virginia court observed:

The federal and the uniform acts both attempt to eliminate judicial competition and conflicting decrees in interstate child custody disputes by establishing clear, definite rules about which state has jurisdiction of a custody dispute and enforcing orders of that state. However, the PKPA is more than a mere codification of the UCCJA. "The federal act is more rigid, allows less judicial discretion, and has attempted to provide more certainty as to the jurisdiction of courts. It eliminates many instances of concurrent jurisdiction which can, and did, occur under the uniform act...." *Mitchell v. Mitch-*

**15.** There is also a minority rule which finds jurisdiction exists in the non-decree present home state without relinquishment by the decree state despite PKPA and UCCJA controlling language. *Voninski*, 661 S.W.2d 872 (where the Tennessee court would not yield to the decree jurisdiction of New York, but then superseded in *Hamilton*, 688 S.W.2d 821). In most current decision, see *Kemp v. Sharp*, 261 Ga. 600, 409 S.E.2d 204 (1991), where the Georgia Supreme Court reversed its own trial court (which had exercised jurisdiction) by ruling in jurisdictional favor of the present home state of Texas based on UCCJA provisions without citing the PKPA at all. The Oklahoma law provides an interesting perspective where the minority rule settled in *Breaux v. Mays*, 746 P.2d 708 (Okl.App.1987)

was overruled by *G.S. v. Ewing*, 786 P.2d 65 (Okl.1990) without a single citation in majority or dissent to the preclusive federal law in the PKPA. For confusion confounded, compare *Fuge v. Uiterwyk*, 542 So.2d 726 (La.App.1989) with *Uiterwyk v. Uiterwyk*, 592 So.2d 1156 (Fla. App.1992) and then *Lamon v. Rewis*, 592 So.2d 1223 (Fla.App.1992). None of these three cases cite the PKPA. Furthermore, see *Earles v. Ahlstedt*, 591 So.2d 741 (La.App.1991) and *Reppond v. Blake*, 822 S.W.2d 759 (Tex.App.1992). For a converse recognition and enforcement of the PKPA in a most recent consideration and a very complex factual situation, see *Giambrone v. Giambrone*, 32 Mass.App.Ct. 118, 586 N.E.2d 23 (1992).

*ell,* 437 So.2d 122, 126 (Ala.Civ.App. 1982). As a federal jurisdictional statute, the PKPA establishes a policy of federal preemption in enforcement of out-of-state custody disputes which, under the Supremacy Clause, takes precedence over state law and must be consulted first in determining whether the Kansas decree is entitled to enforcement here. * * *

One of the primary distinctions between the PKPA and the UCCJA is that the federal act seems to more clearly prefer continuing jurisdiction in the state that issued a valid initial decree. Under the PKPA, enforcement of the Kansas modification decree is required if: (1) the initial custody decree was consistent with the provisions of the PKPA; (2) the Kansas court had jurisdiction under Kansas law to modify the initial decree; and (3) the child or one of the contestants has remained a resident of Kansas.

*Id.* 327 S.E.2d at 679–80 (footnote omitted).

The West Virginia court examined documents regarding the Kansas modification and determined the decree state retained jurisdiction. Consequently, the appellate court reversed the decision of the West Virginia trial court and remanded for enforcement—without stay for rehearing petition.

 West Virginia did recognize and we agree that a punitive provision introduced as a decree modification may not require PKPA/UCCJA enforcement. Consequently, care should be exercised in what is done in Wyoming since Texas compliance enforcement may ultimately be desired or required. *Brooks,* 530 P.2d 547; *In re LeMond,* 395 N.E.2d 1287; *Holt v. District Court for Twentieth Judicial Dist., Ardmore, Carter County,* 626 P.2d 1336 (Okl. 1981). Modification as an effort to enforce the original decree is not, for that reason alone, punitive. *Arbogast,* 327 S.E.2d 675. The punitive change non-enforcement principle is confined in scope with the test being punishment. *Spaulding v. Spaulding,* 460 A.2d 1360 (Me.1983). The concepts are otherwise defined as enforcement to be appropriate compared to punitive dis-

cipline of the offending parent as contempt of the court which is inappropriate and particularly so if in contravention of what may be the best interest of the child.

This principle, however, is narrow; foreign decrees are punitive only if a sister state changes or awards custody, without regard to the best interest of the child, solely to punish one parent for disregarding its authority.

*Id.* at 1367 (citing Brigitte M. Bodenheimer, *Progress Under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modifications,* 65 Cal. L.Rev. 978 (1977)). *See also Matter of Marriage of Settle,* 25 Or.App. 579, 550 P.2d 445 (1976), *rev'd on other grounds,* 276 Or. 759, 556 P.2d 962 (1976) and Brigitte M. Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws,* 22 Vand.L.Rev. 1207 (1969).

For the action previously taken by the district court in this case or hereafter required to enforce decree directed rights of visitation, we find that the district court has UCCJA and PKPA contempt jurisdiction.

## VIII. ATTORNEY'S FEES

The district court awarded the father $772.50 for attorney's fees because the mother failed to appear in person at the June 19, 1990 show cause hearing. Because the father conceded three (of five) issues raised by the mother in this appeal, the father apparently conceded the issue of the propriety of the district court's attorney's fee award. However, since the issue may reoccur in further proceedings, we will briefly address the subject.

 The award of attorney's fees in this case need not be defined to constitute a sanction for civil (or criminal) contempt. The district court had jurisdiction, both subject matter and in personam, to issue an order to show cause. Because the mother's non-appearance at the hearing amounts to a default, the district court can properly order the defaulting party to pay

the father's attorney's fees. As in any divorce or child support proceeding, authority is derived from equitable powers in a marital proceeding, Wyo.Stat. § 20–2–111 (1987); *Hendrickson v. Hendrickson,* 583 P.2d 1265 (Wyo.1978); *Prentice v. Prentice,* 568 P.2d 883 (Wyo.1977); *Hanson,* 754 S.W.2d 292; *In re Marriage of Corrie,* 648 P.2d 501. *See also Jessen v. Jessen,* 802 P.2d 901 (Wyo.1990). *Cf. United Mine Workers of America, Local 1972 v. Decker Coal Co.,* 774 P.2d 1274, 1281 (Wyo.1989), where neither contract nor statute existed (including rule of procedure), imposition of attorney's fees became punitive and consequently determined the character of contempt as criminal. Non-compliance with a court order justifies award of attorney fees. *Homeland Development Co. v. Holly Tp.,* 178 Mich.App. 239, 443 N.W.2d 385 (1989).

For these purposes, the award of attorney's fees rests within the discretion of the trial court as an allocation of cost between litigants and was neither a sanction nor a penalty. *Hendrickson,* 583 P.2d 1265. *See also Haltom v. Haltom,* 755 P.2d 876 (Wyo.1988) and *Duxstad v. Duxstad,* 16 Wyo. 396, 94 P. 463 (1908).

■ With regard to the related question of appellate attorney's fees, the mother requested this court to award attorney's fees in the event we reverse the district court's order. Award of attorney's fees to a litigant on a divorce case appeal is discretionary with this court. W.R.A.P. 10.04 and 10.05. *See also Hendrickson,* 583 P.2d 1265. Since the mother intentionally and willfully refused to appear at the June 19, 1990 hearing to show cause and has failed (at least to some extent) to permit visitation between the father and his children, we will not award attorney's fees to the mother for her costs in pursuit of this appeal. Nothing we can find from this record provides justification for her failure to arrange for visitation between the father and his sons as established in the original divorce decree and subsequent stipulated amendment.

## IX. UNISSUED ARREST WARRANT

■ In *Madden v. Madden,* 558 P.2d 669 (Wyo.1977), we considered the question of whether a non-custodial parent allegedly in default of child support and health insurance obligations (among other things) could be ordered to show cause why he should not be found in contempt for failure to comply with the divorce decree. We said:

> [W]e hold that the Order from which this appeal is attempted lacks the requisite finality to be an appealable order.
>
> This Court has held that an order imposing punishment for contempt of court is a final order which is ̇appealable pursuant to the language in Rule 72(a), W.R.C.P., which defines as a final order, " * * * (2) an order affecting a substantial right, made in a special proceeding, or upon a summary application in an action, after judgment; * * *." * * * The District Court in this instance did not by its order impose any punishment upon the Appellant; in fact the order does not even find the Appellant to be in contempt of court.
>
> A majority of courts hold that when contempt proceedings are brought any order short of the order which imposes punishment by fine or imprisonment is interlocutory in nature, and is not a final order from which an appeal can be taken. * * *
>
> * * * We therefore hold that this appeal must be dismissed because the Order from which this appeal is attempted is interlocutory only, and the absence of a final order in the contempt proceedings results in this court having no jurisdiction to hear the appeal on its merits.

*Madden,* 558 P.2d at 670–71.

In *Madden,* as with the prospective arrest warrant portion of the district court's order in this case, the district court did not adjudge appellant in contempt and did not impose any punishment. Without an issued arrest warrant, we decline to consider any possible future arrest to presently provide a final order. *See also Biscoe v. Biscoe,* 443 N.W.2d 221, 225 (Minn.App.1989) and *Tell v. Tell,* 383 N.W.2d 678 (Minn. 1986).

## X. CONCLUSION

The district court in this case was judicially acting to provide redress for a non-custodial father who desired enforcement of court-ordered visitation. We are saddened that parental intransigence has caused these years to pass without contact between the father and his children and this course of litigation to be a totally undesirable substitute. *Hanson*, 754 S.W.2d 292.

We hold that the contempt citation was a jurisdictionally-appropriate judicial response to the custodial mother's non-attendance at the June 19, 1990 show cause hearing. Wyo.Stat. § 20–5–112(b) and (c). Similarly, the district court's order compelling the mother to deliver the children to Wyoming for visitation was a proper exercise of discretion under the district court's continuing jurisdiction as the decree court. Under the circumstances in this case, we hold that the district court's order was appropriate to enforce visitation and, consequently, not some character of child custody decree modification. Specifically, the district court's issuance of a civil contempt citation (for the mother's failure to appear at the June 19, 1990 hearing to show cause) and the subsequent order requiring delivery of the children to Wyoming neither abused the district court's discretion nor violated any legal principle. Consequently, the judgment is generally affirmed with the exceptions noted. *Quenzer*, 653 P.2d at 306.

The father's concession regarding award of attorney's fees will suffice to require reversal on that issue as presented in this appeal. This court will not award costs or attorney's fees to either litigant for this appeal.

The district court's prospective order—that it would issue a warrant for the mother's arrest if she either failed to bring the children to Wyoming or, in the alternative, if she failed to show cause as to why she should not be required to do so—does not constitute a final order and, thus, is not subject to present appeal. In any event, the district court order pertaining to 1990 summer visitation is now moot.

Affirmed except as herein provided, with remand, consistent with this opinion, for further proceedings which may be required to secure the father's right of visitation with his two sons.[16]

KALOKATHIS, District Judge, concurring, with whom CARDINE, Justice, joins.

I agree with the result of the majority in its thoroughly researched and wide ranging opinion. However, I would reach the same result by a more direct route.

The district court is empowered with continuing jurisdiction to modify and enforce custody and visitation orders. Wyo.Stat. § 20–2–113 (1989). Because one of the contestants, the father, continues to reside in Wyoming, the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, did not deprive the district court of its continuing jurisdiction.[1] Section (d) of the PKPA states:

> The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met [i.e., that the court has jurisdiction under the law of its state] and such State remains the residence of the child or of any contestant.

**16.** We would agree with Chief District Judge Hobbs' specially concurring opinion in *McDougald v. Jenson*, 786 F.2d 1465, 1490 (11th Cir.), *cert. denied* 479 U.S. 860, 107 S.Ct. 207, 93 L.Ed.2d 137 (1986):

> The legal issues are necessarily so puzzling and absorbing that the parties and their attorneys can forget that they are dealing with matters as basic as the right of a divorced father and mother to continue a loving and meaningful relationship with their young son. I hope it is not bad judicial form to suggest to

the parties that there are better ways to look to the future welfare of their child than a continuation of their expensive, transcontinental legal battles, which have now gone on for nearly seven years.

**1.** Those who are mystified by this field of law may find comfort in Henry H. Foster, *Child Custody Jurisdiction: UCCJA and PKPA*, 27 N.Y.L.Sch.L.Rev. 297 (1981), particularly at 309–10.

Since the mother did not initiate modification proceedings in Texas under the Uniform Child Custody Jurisdiction Act (UCCJA), that legislation has no bearing on the issue presented for review.[2]

Under the facts of this case, neither the UCCJA nor the PKPA deprived the district court of continuing jurisdiction. Hence, the only issues which require resolution are those involving the claimed abuse of discretion by the district court, especially the propriety of requiring the mother to present the children in Wyoming. The majority sustains that order and as to the grounds stated, I am in accord. What may happen in the future, and the possible legal ramifications, should the mother decide to defy the order of the district court, is best left for another day.

---

2. In a comprehensive and energetic search of the record, the majority sets out its conclusions in footnote 3 that formal modification of the divorce decree was not initiated in Texas.